De Peyster
v.
Clendining.

DE PEYSTER, administrator, &c. *vs.* CLENDINING and others.

Where the testator devised his real and personal estate to trustees, in trust, to suffer his widow to occupy his *Sharon farm*, with the stock, so long as she made it her permanent residence, and to sell and convert all the rest of his estate into money ; and also, to sell the farm and stock after the death or removal of his widow, and to invest the proceeds of the es-tate ; and after paying certain annuities to his widow and others during her life, to pay to his two sons and three of his daughters certain specified annuities during their respective lives, out of the income of his estate, and to divide the residue of the annual income equally between such five chil-dren ; and if either died without issue, his or her annuity and share of the income to be divided among the survivors, or if leaving issue then to such issue during the life of such widow, and after her death the principal of the share to go to such issue, and the principal of the share of either child who died leaving issue after the death of the widow of the testator to go immediately to such issue : *Held*, that the trust as to the Sharon farm was valid, as a devise of the legal estate therein to the widow, during her life or residence thereon, by the operation of the provisions of the revised stat-utes turning certain trusts into legal estates in the cestuis que trust ; that the devise to the executors and trustees was valid as a power in trust to sell all the testator's real estate and to convert it into personalty, for the purposes of the will ; and that the Sharon farm was to be considered as converted into personalty at the death or removal of the widow, and the residue of the real estate from the death of the widow. *Held*, also, that the life estate of each child in his or her share of the estate was valid, as well in the proceeds of the Sharon farm after the death or removal of the widow, as in the other property from the death of the testator. And that the limitations of the respective shares to the children of such of them as should leave issue were also valid ; as the absolute ownership of each share could not thereby be suspended beyond two lives in being at the death of the testator.

But the testator having directed that if any of his five children should die without issue, the income of his or her share should go to the survivors for life, with remainder to their children, after the death of the widow ; *Held*, that the limitation over to the survivors and to their children was void, as it might suspend the absolute ownership for more than two lives in being at the death of the testator.

Where a will was made before the revised statutes went into operation, but the testator died afterwards, the validity of the trusts and provisions of his will must be determined by the law as it existed at the time of his death.

Where there is a specific bequest of personal property for life, or a shorter period, the legatee must give to the personal representative of the testator an inventory of the articles bequeathed, stating that they are in his pos-session under such bequest, and that when his interest therein has expired they are to be delivered up to such personal representative.

1840.

De Peyster
v.
Clendining.

The court of chancery will not permit a trust to fail for want of a trustee to execute such trust; and where all the trustees named in a will refuse to act, the trust devolves upon the court, and a new trustee will be appointed if necessary.

Whether, where a testator gives to his trustees a distinct character as trustees, entirely independent of their character of executors, an administrator with the will annexed can execute such trust; *Quære*.

Where it was doubtful whether the administrator with the will annexed was authorized to execute a trust power given to a person who was also named in the will as executor, but who refused to accept the trust, the court appointed such administrator trustee, and directed him to execute the conveyance of the property, under the power in trust, both as administrator and as trustee.

April 21. THE bill in this cause was filed by F. De Peyster, the administrator with the will annexed of J. Clendining, deceased, to obtain a judicial construction of the will of the decedent. The testator resided in the city of New-York, and made his will in 1829, and died in January, 1836, possessed of a considerable real and personal estate. He left a widow, and two sons and four daughters, to wit : John and James, Sarah, the wife of William Hogan, Margaret, the wife of H. Bulkley, Letitia, who married Stuart J. Mollan, and Jane; who were his only children and heirs at law. By his will, after bequeathing to his wife all his plate and household furniture, for her own use and benefit, and with power to make such disposition thereof as she pleased among his children; the testator disposed of the residue of his estate as follows :

" All the rest and residue of my estate, as well real as personal, of every kind and description whatever, I give, devise and bequeath unto Stuart Mollan, John Adams, and James Magee, of the city of New-York, merchants, and to the survivors and survivor of them, and to the heirs and assigns of the survivor, upon the following trusts and conditions, and to be appropriated and disposed of as hereafter directed; that is to say : *First*, I do hereby order and direct that my said trustees, the survivors and survivor of them, suffer and permit my said wife, to occupy and enjoy, and have the absolute use, profits, and proceeds of my farm called Sharon, situate in the twelfth ward of the city of

New-York, together with all the stock of cattle, horses, carriages, implements of husbandry, and farming utensils used upon or belonging or appertaining thereto, so long as my said wife may choose to make the said farm her permanent residence, and without any charge against her for such use or occupancy; and when my said wife shall choose to remove from the said farm, or at her death, whichever may first happen, I then order and direct that my said farm shall be sold and disposed of to the best advantage, and that the proceeds be securely and profitably invested and disposed of, with the residue of my estate, as hereafter mentioned.

" *Second.* I hereby order and direct that my debts and funeral expenses be first paid, and that all the rest and residue of my estate, whether real or personal, be disposed of and converted into money, as soon after my decease as may be convenient, and the proceeds securely invested in the most productive manner; leaving it, however, to the discretion of my trustees to suffer such parts of my personal estate as are now invested in bank stock to remain in its present state so long as they may deem it most for the interest of my family.

" *Third.* I do hereby order and direct that my said trustees, out of the interest and proceeds of my estate, shall pay to my beloved wife yearly, and every year, during the time she makes my said farm called Sharon, her permanent residence, and my daughters, Jane and Letitia, shall reside with her, the sum of $2500; and that from the time my said wife shall relinquish the possession of said farm, my said trustees pay her yearly, and every year, during her natural life, while my said daughters, Jane and Letitia, shall reside with her, the sum of $3000. If either my said daughters, Jane or Letitia, should marry, or decline residing with my said wife, then I order and direct my said trustees to deduct the sum of $500 yearly, from the said yearly allowance to my wife above mentioned. And if both of my said daughters should marry, or decline residing with my said wife, then I order and direct that my said trustees pay to my said wife yearly, and every year,

1840.

De Peyster
v.
Clendining.

during her natural life, the sum of $1500 only; and this bequest to my said wife is made with a view to her permanent ease and comfort, and upon the condition that in consideration thereof she relinquish to my said trustees all her right or claim to dower, or thirds, in or out of my estate. I further order and direct, that my said trustees pay to my daughter Margaret, the wife of Horace Bulkley, the sum of five dollars, as and for her full and entire portion of my estate; I having already advanced and paid on account of her and her family a much larger sum than the portions of any of my other children will amount to.

" I do further order and direct, that my said trustees, out of the income or proceeds of my estate, pay to my daughter Sarah, the wife of W. Hogan, yearly, and every year, during her natural life, the sum of $20,000; to my son John, yearly and every year, during his natural life, the sum of $20,000; to my son James, yearly, and every year, during his natural life, the sum of $20,000; and to my daughter Letitia, yearly and every year, during her natural life, the sum of $40,000; and to my daughter Jane, yearly, and every year, during her natural life, the sum of $40,000. And if the annual income or proceeds of my estate shall amount to more than sufficient to pay yearly the several sums of money so directed to be paid to my said wife and children, I then order and direct that my said trustees make an equal distribution of the overplus yearly among my said children, Sarah, John, James, Jane, and Letitia; and if the annual income or proceeds of my estate shall not amount to sufficient to pay yearly the several sums of money so directed to be paid to my said wife and children, then I order and direct that the deficiency be rateably deducted from the several sums so directed to be paid yearly to my said children, Sarah, John, James, Jane, and Letitia. And I do further order and direct, that the yearly payments so ordered to be made to my said wife and children be paid to them personally, or in case of their absence or sickness, upon their written order, and not in any other manner or to any other person for them; and

that their personal receipts be taken by my said trustees for all such payments.

" In case either of my said children, Sarah, John, James, Jane or Letitia, should die without lawful issue, I order and direct that the yearly sum or sums of money hereby bequeathed to the child so dying be equally divided among the survivors of them ; and if the child so dying shall have lawful issue, I then order and direct that the yearly sum or sums hereby bequeathed to the child so dying be paid to his or her child or children, during the life-time of my beloved wife ; and upon the death of my beloved wife I further order and direct that the yearly sum or sums ·of money hereby bequeathed to her be in like manner divided among my said children and their legal representatives. It being my will and intention hereby declared, that my said children, Sarah, John, James, Jane and Letitia should, during their lives, have and enjoy the whole income and interest of my estate, (subject to the said life annuity to my wife and the provision above mentioned) but no part of the principal thereof. And that the principal of my estate should be equally divided among their lawful issue, the children of each taking the share or portion which their parent would have been entitled to, if the principal had been bequeathed to my said children, Sarah, John, James, Jane and Letitia.

" I do further order and direct, that after my beloved wife shall have departed this life, if any of my said children, Sarah, John, James, Jane and Letitia, should then be dead leaving lawful issue, that then the share or portion of the principal of my estate which the child so dying would have been entitled to if the principal had been bequeathed to my said children, be paid to his or her child or children. And that upon the death of any of the said children of any of the said children after the death of my said wife, a like portion of the principal of my estate be paid to his or her children ; and that a final settlement of my estate among my grandchildren, according to this my will and intention as herein before expressed, be made immediately after the death of the survivor of my said children.

1840.

De Peyster
v.
Clendining.

"And in order more effectually to carry into effect the trust and object of this my said will, I do hereby authorize and empower my said trustees, and the survivors and survivor of them, to execute all deeds, conveyances and other writings necessary for executing the trusts hereby created, and do also authorize and empower the survivor of my said trustees, by his last will and testament or otherwise, to nominate, constitute and appoint, at his discretion, some prudent and faithful person or persons in his place and stead, with like full power to execute this my will and the trusts hereby created.

"*Lastly.* I do hereby nominate, constitute and appoint my said trustees herein before named to be the executors of this my last will and testament, and the guardians of such of my children as are minors, during their minority."

After the death of the testator the will was duly proved before the surrogate. All the executors and trustees named therein having refused to accept the trust, and having also renounced before the surrogate, administration with the will annexed was duly granted to the complainant. At the time of the filing of the bill in this cause, all the children of the decedent, and his widow, were living, and with the husbands of the three daughters were made parties. Mrs. Hogan and James Clendining also had children, who were infants, and who appeared and answered by their guardians ad litem. Mrs. Mollan then had one child who was also made a party defendant, but who died soon after, and Mrs. Mollan herself died after the hearing of the cause, without any issue then living, leaving her husband surviving. The three trustees never having executed any written instrument renouncing the trust attempted to be conferred upon them by the testator, as trustees of his estate, they were also made defendants. Two of them appeared and put in their answer, declining to act as trustees and consenting to relinquish any right which they might have to act as trustees, to such person as the court might think proper to appoint. The other trustee suffered the bill to be taken as confessed against him for want of appearance. Answers

were put in for all the other defendants, and most of them submitted the construction of the will, and the validity of its several provisions, to the court. But the defendants Bulkley and wife, who had previously given notice to the administrator that they intended to contest the validity of the several trusts in the will, insisted by their answer that all the provisions of the will, except the bequest of the plate and the household furniture to the widow, were inoperative and void under the provisions of the revised statutes ; and that Mrs. Bulkley was therefore entitled to a distributive share of the residue of the estate as one of the children and heirs at law of the testator.

*E. H. Owen,* for the complainant. The points which the complainant seeks to have adjudicated and settled by this court are—1. Whether any, and if so what portions of the will are repugnant to the revised statutes, and therefore void. 2. Whether any, and if so what portions of the said will are void for ambiguity or uncertainty. If the will is held valid, then, 3. What is the true construction of the will as relates to the trusts and division of the estate among the grandchildren. 4. Whether the complainant, by virtue of his appointment of administrator with the will annexed, has or has not power, and whether it is his duty to execute and carry into effect the trusts therein contained ; if not, then, 5. What are his powers and duties as such administrator, in reference to the execution of the will and the trusts therein contained. If the will shall be sustained by the court, and it shall also be determined that there is no person authorized at present to execute the trusts, then, that the complainant or some other suitable person may be appointed trustee, with power to execute and carry into effect the trusts contained in the will, according to the intentions of the testator as decreed by this court. (5 *Wendell,* 224. 1 *Cruise,* 539. 2 *R. S.* 72.)

*J. L. Mason,* for defendant Bulkley and wife. The devise to the trustees is void and vests no estate in them. The ob--

jects for which the trust is created are not authorized by the revised statutes. The trust is to continue, according to the true construction of the will, until the termination of six lives, during all which time the power of alienation is suspended. Upon any construction, the trust *may* continue, and the power of alienation be suspended, for a longer period than during the continuance of two lives. The remainders to the grandchildren are also void, being contingent both as to the persons who are to take, and the share or portion of the estate to be enjoyed by each; and the power of alienation is therefore suspended until the termination of the trust. The trust being void, and the remainders void, the estate descended to and vested in the heirs at law, subject to be divested by the execution of the power in trust, if the doctrine of powers can be applied to the case. But the devise to the trustees cannot be supported as a power in trust: 1. The trust was not created for one of the purposes enumerated in the 55th section, and is void. 2. The exercise of the power would effectually prevent the alienation of the estate until the period fixed by the testator for the termination of the trust. (1 *R. S.* 727, § 47.)

*J. Wallace,* for defendants Stuart J. Mollan and Adams & Mollan. The will being made prior to the revised statutes, its construction is not to be affected by those statutes. (2 *R. S. p.* 68, § 70.) But if the will is subject to be construed by the revised statutes it is not repugnant to the provisions of those statutes. The will is not void for ambiguity. (2 *R. S.* 68, § 70.)

*J. Anthon,* for John and James Clendining.

*B. F. Butler,* for Mrs. Clendining and Mrs. Mollan.

*J. W. Gerard,* for Hogan and wife, and James Clendining, and their respective children. The will is valid under the revised statutes. If the will is maintained the income

of the widow is to be reduced five hundred dollars a year on account of the marriage of Letitia, after the death of the testator, to Stuart J. Mollan. That deduction is expressly declared to take place in case of either one of two contingencies, viz. either on the marriage of her daughter, or her declining to live with her. The daughter has married and the first contingency on which the income was to be reduced has taken place. There is no qualification on the happening of either of these two contingencies. In case the will is declared invalid, and that Mr. Clendining died intestate, the children of the intestate, especially John Clendining and Mrs. Bulkley, are to be charged against their share of the real and personal estate with the advances made by him in his lifetime, to them respectively, within the provisions of the revised statutes. (1 *R. S.* 754.)

THE CHANCELLOR. There can be no possible doubt as to the validity of the devise of the Sharon farm to the widow for life, provided she elects to reside there so long. If the law had continued as it was when the will was made, in 1829, the legal estate would have vested in the trustees ; but they would have held that legal estate, during the time Mrs. Clendining continued to reside upon the farm, as a mere naked trust, for her use. Such a trust is now, by virtue of the 47th section of the article of the revised statutes relative to uses and trusts, (1 *R. S.* 727,) turned into a legal estate in her, of the same quality and duration and subject to the same condition as the beneficial interest which the testator intended to give her therein. And the trustees, by the subsequent provisions of the will, have only a power in trust, to sell the farm and convert it into money, after she shall cease to occupy it as her residence. (1 *R. S.* 729, § 56.) She is also entitled to the use of the stock of cattle, horses, carriages, implements of husbandry and farming utensils, which belonged to the farm at the death of her husband, as a specific bequest to her for life, or so long as she continues to reside there. But she must, in conformity to the practice on that subject, give to the ad-

ministrator an inventory of the articles, specifying thàt they are in her custody as given to her while she resides on the farm only ; and that when she dies or ceases to reside there these articles, or those which may be substituted in the place of them in the ordinary use of the farm, are to be delivered to the administrator, or to the trustees who may be appointed to carry into effect the provisions of the will. (*Slanning* v. *Style*, 3 *Peer Wms.* 336. *Covenhoven* v. *Shuler*, 2 *Paige's Rep.* 132.)

Although this will was made before the revised statutes went into effect, yet as the testator died long afterwards, the validity of the trusts and provisions of the will must depend upon the law as it was when the will took effect by his death. The 70th section of the article of the revised statutes relative to wills of real and personal estate, (2 *R. S.* 68,) which declares that none of the provisions of that title shall affect the construction of any will previously made, is not broad enough to reach this case. And the other provision of the revised statutes referred to by the counsel for Stuart J. Mollan, on the argument, (1 *R. S.* 750, § 11,) only applies to wills which had taken effect before that chapter was in force as a law. A will does not take effect from its date but only from the death of the testator. The provisions of the first chapter of the second part of the revised statutes, and of the title of the fourth chapter relative to accumulations of personal property and of expectant estates in such property, may therefore impair the validity of the provisions of a will made previous to the first of January, 1830 ; provided such will did not take effect by the death of the testator until after that period. If there are any provisions of this will therefore which suspend the power of alienation of real estate for more than two lives in being at the death of the testator, or which suspend the absolute ownership of any part of the personal estate for any longer period, those provisions cannot be sustained.

As the trustees are not authorized by the will to receive the rents and profits of the real estate, but merely to sell

the property andconvert it into personalty for the purposes of the will, no estate is vested in the trustees ; but the devise to them is a mere power in trust, under the provisions of the 56th section of the article of the statute relative to uses and trusts. (1 *R. S.* 729.) And as this power in trust to convert the testator's real estate into personalty is imperative, under the provisions of the 96th section of the article relative to powers, the real estate, except the Sharon farm, is considered in equity as converted into personalty from the death of the testator ; and that farm will be considered as converted at farthest from the death of the widow, or the termination of one life in being at the testator's death. No estate whatever being vested in the trustees, as real property, no question arises as to the validity of the trust under the 55th section of the article relative to uses and trusts ; as that section is confined to express trusts of real property where the legal title to the estate is vested in the trustees. The question for consideration, therefore, is whether the objects for which the conversion of the real estate into personalty is directed by the testator, are valid. In other words, whether all or any of the trusts upon which the trustees are directed to hold the converted fund are valid as trusts of personal estate.

In the recent case of *Gott* v. *Cook*, (7 *Paige's Rep.* 521,) this court held that a trust of personal estate might be created for any purpose which was not illegal, so far as related to the mere vesting of the legal title to the property in the trustees. But that all limitations of future or contingent interests in such property, or interests in the future income thereof, were subject to the same rules and restrictions which were prescribed as to similar future or contingent interests in real estate. And in the more recent case of the will of the late Abraham Van Vechten it was decided that in a trust of personal property, or money, a suspension of the absolute ownership as to one part of the fund for a longer period than was allowed by law, did not make void the disposition which had been made of another

part of the trust fund. And that where personal estate was vested in trustees upon various trusts, some of which were valid and others void, the courts must sustain those dispositions of the property which were legal if they could be separated from those which were illegal and void. (*See Van Vechten* v. *Van Veghten, ante, p.* 104.) Testing the case under consideration by these principles, nearly every provision of this will must be sustained.

Taking one part of the will by itself, it certainly looks as though the testator intended to keep all the property in the hands of the trustees so long as any of his children survived ; and to divide the income thereof among the surviving children and the descendants of those who had died leaving issue, even after the death of his widow. But by referring to a subsequent clause of the will it is evident he only intended to suspend the absolute ownership, and the right to the immediate enjoyment by his grandchildren, of the principal of the share of each child in the fund, during the life of the widow and of the child who had a life estate in that share. This last clause provides for the payment of the principal of the share of any child, who has died during the life of the widow, leaving issue, to the issue of such child immediately upon the death of the widow ; and that as the children severally die, afterwards, their respective shares shall go immediately to their children, without waiting for the death of the survivors. The absolute ownership of each class of grandchildren, in their respective shares of the principal of the fund, and the right to the immediate possession and enjoyment thereof, is then only suspended during the lives of the parent and of the grandmother. The limitation of the life estate of each child, in his or her original share, is therefore valid, both as to the proceeds of the Sharon farm, and also as to all the other estate of the testator ; and the limitations over of such original shares to the children of such first taker upon the death of the parent and of the widow, are also valid,

The testator probably intended to give to Mrs. Hogan and his two sons the income of twenty thousand dollars each, and to Jane and Letitia each the income of forty thousand dollars, for life, and the principal of those sums to their children respectively after their deaths ; and to divide the income of the residue of his property, including the amount of the annuity to the widow, after her death, equally among the five children during their several lives, and to give the capital of each share to their children respectively after their deaths. But by mistake he has inserted the capital of the original or primary legacy to each, as an annual payment. As there is nothing, however, upon the face of the will to show that he intended any thing different from what he has expressed, the court must construe it according to the language he has used ; as if he actually supposed his estate might be large enough to produce an annual income of $140,000, besides the provision made for his wife. The effect of such a construction, which is the only legal one which can be put upon this will, is to divide the whole proceeds of the real and personal estate into seven equal shares, after carving out of the same the provision for the widow, and to give to Mrs. Hogan and the two sons the income of three shares, and to Jane and Letitia of four shares, for life ; that is, to each of the three first named children the income of one share, and the income of two shares to each of the two last mentioned children. And the capital of the share or shares of each child is what the testator has limited over to their children respectively in case they die leaving issue. The provisions of the will therefore must be carried into effect, according to this construction, as to each of the five children of the testator, interested in these shares, who shall die leaving lawful issue.

The children of Mrs. Hogan and of James Clendining who are now in existence have vested remainders in the capital of the shares of their parents, subject to open and let in after-born children ; and subject also to be wholly divested by an entire failure of issue at the death of their parents respectively. But as the children who may be liv-

1840.

De Peyster
v.
Clendining.

ing at the death of the parent, and the personal represen- tatives of such as have previously died, can, upon the death of the widow and the parent, convey the whole interest in that share of the estate, the absolute ownership in that share cannot be suspended beyond the period of two lives in being at the death of the testator ; to wit, the life of the widow and the life of the parent who has a life estate in the income of the share. The result will be the same as to the shares of John and Jane, if they should have issue who should survive them. But if any of the four who are now living, should die without leaving issue at the time of their deaths, as was the case with Mrs. Mollan, who sur- vived her only child and died without issue, the capital of their respective shares will be in the same situation in which her two-sevenths of the estate now are ; which I will next proceed to consider.

The testator appears to have contemplated and provided for the case of the death of one or more of the five chil- dren without issue, during the lifetime of the others ; and has directed in that case that the income of that share shall be divided among the survivors for life, and the capital to go to the children of such survivors at their deaths, if they should leave issue. But as these bequests over to the sur- vivors and their children are not so limited that they must necessarily vest in possession as well as in interest, so as to be alienable during the continuance of any two lives in be- ing at the death of the testator, they are void, according to the decision of the court for the correction of errors in the case of James's will. And the decision of the same court in the case of Lorillard's will, shows that they cannot be sup- ported as cross-remainders to any extent, where such cross- remainders are limited among more than two persons. It is true, in the event that has occurred as to Mrs. Mollan's share, the limitation over of the income thereof to her surviving brothers and sisters has not in fact been suspended longer than her life. But the absolute ownership of that share, if they are to take the income thereof for life from the trustees, will be still further suspended, during their re-

spective lives and the life of the widow, before it can vest absolutely in the grandchildren under the provisions of the will. And in the meantime that share of the converted fund is inalienable, by the operation of the 63d section of the statute relative to uses and trusts, in connection with the second section of the title relative to expectant estates in personal property. (1 *R. S.* 730, § 63. *Idem*, 773, § 2. *Gott* v. *Cook*, 7 *Paige's Rep.* 523.) I must therefore declare these contingent limitations over of the shares of such of the children of the testator as should die without leaving issue, to be inoperative and void. The result is that the income of Mrs. Mollan's two-sevenths of the estate which accrued previous to her death, subject to the provision for the widow, belongs to her surviving husband as her personal representative. But so much of the capital of that seventh of the testator's estate as consisted of personal property at the time of his death, belongs to the widow and next of kin, as an interest in personal property not legally and effectually disposed of by his will ; subject to the provision for the widow contained in the will. And so much thereof as consisted of real estate belongs to the mother and to the surviving brothers and sisters, as an interest in real estate not legally disposed of by the will ; and which therefore belonged to the heirs at law of the testator, notwithstanding the conversion thereof into personalty. (*See Leigh & Dalz. Eq. Conv.* 99.) Mrs. Bulkley is therefore entitled to an equal share with the other children in this two-sevenths of the estate, and in the income thereof which has accrued since the death of her sister. And if any of the other four children should hereafter die without leaving issue, their shares of the estate, from the time of their deaths, must be disposed of in the same manner. The interests of the testator in his personal estate which were not effectually disposed of by his will, in consequence of the contingency which has happened, or of those which may hereafter happen, belong to the widow and to those who were the next of kin of the testator at the time of his death. Stuart J. Mollan, as the personal

representative of his deceased wife, will be entitled to her share thereof, which is one-sixth of two-thirds, subject to the provision for the widow. But as Mrs. Mollan was not seized in her lifetime of any present interest in possession in the real estate, as such, her husband is not entitled, as tenant by the curtesy, to any interest in her share of the real estate not effectually disposed of by the testator. Under the provisions of the revised statutes, as amended in 1830, (1 *R. S.* 752, § 6,) the mother, as heir of the daughter, takes an estate for life in one-sixth of that share, and after her death it goes to the five brothers and sisters, or their heirs ; as they are now entitled to the other five-sixths thereof, as the heirs at law of the testator.

Although all the trustees named in the will have declined the trust, this court will not permit a devise in trust, which is valid in other respects, to fail for want of a trustee. And if the administrator with the will annexed is not substituted in the place of the trustees who have declined, the trust devolves upon the court ; and the decree must direct the appointment of a new trustee in the place of those who have declined to execute the power in trust, to convert the real estate into personalty for the purposes of the will, and to invest the proceeds of the real and personal estate, and distribute the income thereof from time to time according to the rights of the parties. (1 *R. S.* 730, § 70, 71. *King* v. *Donnelly and others*, 5 *Paige's R.* 46.)

The revised statutes provide that in all cases where letters of administration with the will annexed shall be granted, the will of the deceased shall be observed and performed ; and that the administrators with such will shall have the rights and powers, and be subject to the same duties as if they had been named as executors in such will. (2 *R. S.* 72, § 22.) There can be no doubt, therefore, that in cases where the execution of a trust, or of a power in trust, is confided by the testator to his executors, as such, they cannot execute the trust without also taking out letters testamentary, and assuming the office of executors. In such cases the administrator with the will annexed is

probably entitled to execute all the trusts of the will, in the same manner as if he had been named therein, by the testator, as the executor and trustee. The difficulty in the present case, on that subject is, that the testator appears to have intended to give to the three individuals named in his will a distinct character as trustees, entirely independent of their character of executors ; although he has in the concluding paragraph of his will appointed the same trustees to be the executors of his will and the guardians of his minor children. At least there is sufficient doubt on this subject to make it the duty of the court to put the matter beyond all question, by directing a provision to be inserted in the decree substituting the administrator with the will annexed, as the trustee, in the place of the three persons named in the will, who have refused to accept the trust. And any conveyances which he may make, in pursuance of the power in trust to convert the real estate into personalty, should be executed by him both in the character of administrator with the will annexed, and as such substituted trustee ; so that upon any construction of the will, and of the provisions of the statute on this subject, the purchaser will obtain a perfect legal title to the lands thus conveyed.

The annuity to the widow must be reduced $500, from the time of the marriage of Mrs. Mollan ; whether she continued to live with her mother after the marriage or otherwise. The language of the will on that subject is too plain to admit of any doubt. And if Jane marries, or declines a residence with her mother as her general place of abode, the annuity to the mother is to be reduced the further sum of $500, from the time of such marriage or declension.

As the litigation in this case has been produced by the inartificial manner in which some of the provisions of this will were drawn, it appears to be a proper case to direct that the costs of all parties shall be paid out of the testator's personal estate. A decree must be entered declaring the construction of the will, and directing the distribution

of the estate and the income thereof, by the administrator and substituted trustee, accordingly. The decree must also contain a provision to protect the equity of Mrs. Bulkley, in whatever may belong to her, against her husband and his creditors, in the usual form. The accounts of the complainant, up to the present time, with the several parties interested, must be stated and passed before the taxing master or one of the exception masters of the first circuit, upon due notice to all persons interested in the estate, or their solicitors or guardians. And a provision may also be inserted in the decree, as in the cases of *Hawley* v. *James*, (5 *Paige's Rep.* 488,) and *Gott* v. *Cook*, (7 *Idem*, 544,) for a periodical or annual passing of the accounts of the complainant; and giving liberty to any of the parties to apply to the court for further directions, from time to time, as may be proper.