Reed, J.,
delivered the opinion of the court.
This case, for the purposes of abstracting, briefs, and argument, was consolidated with the case of Elliott v. Bank, ante p. 164. The litigation grew out of the same facts and transactions, but the determination of the suits depends upon the application of different legal principles. The suit against the bank was for a supposed illegal seizing and conversion of the property by attachment and execution. In this, the defendants are sought to be held responsible for a conversion *170 of a portion of the same property as assignees of one Agnew, or as trustees. A full statement of the facts is made in case of Elliott v. Bank, but a brief recapitulation may be, and probably is, necessary. Agnew was. engaged in operating a sawmill, being the owner of the mill, appliances, logs, and lumber, subject to two chattel mortgages, held by Elliott, on a portion of the property. One matured August 19, 1881; the other December 10,1881. No possession of the property was taken at the maturity of the indebtedness. Agnew being indebted to the First National Bank of Colorado Springs, it, on the 22d day of March, 1882, sued out an attachment which was levied upon the property, and a deputy put in charge. On the 28th’of March, while the property was still in the custody of the sheriff, Agnew attempted an assignment, and the following papers were executed by the respective parties:
“ Sold to R. C. Elliott and James T. Hobbs, in consideration of moneys by me owing to them, all lumber in the yard at the Agnew sawmill, on the Talbot ranch, all lumber at station and on ears, all lath, all property in and about said mill and premises, and all debts due me of every name and nature for any lath, lumber, or any other property by me sold; and I do hereby transfer to said Elliott and Hobbs the entire charge of the operations of said sawmill. Dated March 28, 1882. F. M. Agnew.”
“ We agree to use the property of Frank M. Agnew, this day sold and transferred to us, in the payment of the 'debts of the said Agnew, to the best of our ability. March 28, 1882. R. C. Elliott. James T. Hobbs.”
Although there was a formal acceptance in writing of the trust by Elliott and Hobbs, no possession of the property passed by the assignment, nor could pass, as it was in the possession of the sheriff. How Stout, the other defendant, became an assignee, and, as supposed, chargeable, is left quite vague, but it is presumed that he was subsequently attempted to be put in, either in the place of Elliott or as an addition, but which we cannot determine from the record. Both Hobbs *171 and Stout (defendants) were creditors of Agnew. Immediately after the execution of the attempted assignment papers •Hobbs ignored and repudiated it, and commenced proceedings by attachment. Stout, who is not shown to have accepted or in any way participated in the supposed assignment, did the same. Both attachments were leveied'upon the property; Judgments obtained, and a part of the supposed assigned property sold in satisfaction of the judgments. It having been determined in Elliott v. Bank, supra, that he had no title to the property by virtue of his mortgages, and the attempted assignment having proved inoperative, the property never having passed*’into the possession of the parties for administration and distribution, it is apparent that no title to the property or proceeds were vested in the plaintiff'by reason of the mortgages, or the pretended assignment. Neither the property nor proceeds were administered, or. attempted to be, under the assignment; consequently there could be no conversion of the property, or maladministration of a trust. What property they obtained was by operation of law as judgment creditors purchasing under sales by the sheriff in satisfaction of their respective debts. The only status of plaintiff was that of a creditor. If hé failed to enforce hi's claims, and other creditors, by superior diligence, legally absorbed the estate, he seems to b.e remediless. That an assignee cannot be chargeable with the assets of the assignor until he has become'invested with them as assignee is a proposition so well established that no authorities'in its support are necessary; It is clearly shown by the testimony of Hobbs and Stout that the former only accepted' the assignment conditionally, and repudiated it on the evening of the same day. The latter did not accept at all.; ‘.‘In voluntary and express trusts no title vests in the proposed trustee, by whatever instrument it is attempted to be transferred, unless he expressly or by' implication' accepts the office, or in some way assumes its duties and.liabilities.”' Terry, Trusts, § 259: Armstrong v. Morrill, 14 Wall. 138; De Peyster v. Clendining, 8 Paige, 295; Maccubbin v. Crom *172 well, 7 Gill & J. 157. As to what acts constitute an acceptance of a trust,, see Perry, Trusts, § 261. The immediate proceedings-of-the defendants by attachment negative the supposed acceptance of the trust and liability for conversion of property.
The judgment must be affirmed.

Affirmed.