Goudie *et al. v.* Johnston *et al.*

------◆------

No. 12,645.

## GOUDIE ET AL. *v.* JOHNSTON ET AL.

WILL.—*Personal Property.—Life-Estate.—Power of Disposition.*—A bequest of personal property to a wife for use during her life, with power to control and manage the same, and at her death all remaining to go to grandchildren, vests in her a life interest, but with no absolute power of alienation.

SAME.—*Remainderman.—Protection of Interest.— Waste.*—One having an estate in remainder in personal property may maintain a suit against the life-owner for the protection of his interest.

From the Franklin Circuit Court.

*L. W. Florea, G. C. Florea, S. E. Urmston* and *I. Carter,* for appellants.

*H. Berry, F. Berry, J. F. McKee, D. W. McKee, J. E. McDonald, J. M. Butler* and *A. L. Mason,* for appellees.

ELLIOTT, C. J.—In the will executed by Alexander W. Johnston, deceased, are the following provisions :

" Item 2. I give, grant and bequeath to my wife, Jane Johnston, for her use during her natural lifetime, all the rest and residue of my estate, real and personal, not mentioned in item No. 1 of this will, she to have the control and management of the same, and at her death all of said personal estate remaining, and all of said real estate, except that named in item No. 1, shall go to and be equally divided among my grandchildren, to wit : Rose B. Goudie, Hannah A. Irwin, Clement A. Cory, Maud Cory and Lenora Cory, share and share alike ; and if any of said grandchildren shall die without issue alive, before division or distribution of said property among them, then, and in that case, all of said property shall be equally divided among the survivors, unless one of them should be dead leaving issue, then such issue shall take the share that would go to such deceased grandchild if living.

" Item 3. I further will and direct that Clement R. Cory, husband of Mary P. Cory, shall never have any part of my estate, or shall never have the management or control of the same."

There are other provisions in the will, but, as these are all that relate to personal property, and as the controversy concerns only that property, it is unnecessary to notice the other provisions of the instrument. The provisions making a disposition of the personal estate of the testator are complete in themselves, and are neither aided nor impaired by any other provisions of the will, so that the decision of the controversy turns upon the construction to be given to the provisions of the will we have copied.

In our judgment the controlling words of this will are,

"for her use during her natural lifetime," for there are no other words of equal power in the instrument. These words not only confine the first taker's estate to her life, but they further confine it by declaring that the property is for her use. If the property is for her use during her natural lifetime, it is difficult, if not impossible, to conceive how she can have an absolute power of disposition. We freely grant that this power of disposition may often be implied. *Silvers* v. *Canary, ante,* p. 267, and cases cited; *Ramsdell* v. *Ramsdell,* 21 Maine, 288; *Scott* v. *Perkins,* 28 Maine, 22; *Shaw* v. *Hussey,* 41 Maine, 495; *Paine* v. *Barnes,* 100 Mass. 470; *Harris* v. *Knapp,* 21 Pick. 412; *Scholl's Appeal,* 2 Atl. R. 538.

But we do not think that the language of the will before us contains words from which a power of disposition can be implied; on the contrary, we think the language excludes the implication that any such power exists. The words, "she to have the control and management of the same," are not at all incompatible with her right to use the property during her life. The only words which can be regarded as at all inconsistent with those confining her interest to an estate for life, are the words, "and at her death all of said personal estate remaining, and all of my real estate, except that named in item No. 1, shall go to my grandchildren;" but we can not regard these words as of such potent effect as those first quoted. Nor would they be consistent with the language of the third item of the will, if construed as the appellees assume they should be, as is obvious from an examination of that clause.

It must be kept in mind that the property is not unconditionally devised to Mrs. Johnston even for life, for the bequest is "for her use during her natural lifetime." There is, therefore, a clear restriction, not only to her life, but to her use. It can not justly be affirmed that one to whom property is bequeathed "for her use" during life is clothed with a power of disposition, for the word *use* is one of much force,

and confines the estate to the hands of the first taker, since it is logically inconceivable that one having a right to use can possess the absolute power of alienation. We can not thrust aside the words "for her use during her natural lifetime," for they are of high importance and great strength.

It is the law that an estate given in clear words can not be cut down by subsequent words unless they are equally clear and decisive, and it is not easy to see why, upon a like principle, an estate created by clear words can be enlarged by words less clear and decisive. *Hochstedler* v. *Hochstedler,* 108 Ind. 506; *Bailey* v. *Sanger,* 108 Ind. 264; *Allen* v. *Craft, post,* p. 476.

However this may be, here are words of clear and certain import, and no others that enlarge their meaning, and we must assign to them controlling force. But we have other provisions materially strengthening these words, for a remainder is limited to the testator's grandchildren, and it is, therefore, manifest that he contemplated that the estate should not all be disposed of by the first taker, for, if that had been in contemplation, there would have been neither necessity nor propriety in providing for a disposition of property remaining after the death of the first taker. The rule recognized by the authorities is, that where there is a remainder limited to children or grandchildren, the implication is that the first taker is invested with nothing more than a life interest in the property. Hawkins Wills (2d ed.), 178. This, it is easy to see, is the natural and reasonable rule, for, if the first taker took the whole estate, there could be no estate or interest in remainder.

Personal property is, as every one knows, of a perishable nature, and use may totally destroy or materially impair it, so that it is quite natural and reasonable to interpret the phrase, "all of said personal estate remaining," to mean such as use has not destroyed. This is a just and reasonable implication, especially so where, as here, it is consistent with the other provisions of the will. We are not, however, with-

out authority upon this precise question. The Supreme Court of the United States, speaking of a will very like the one before us, said: "The use of many species of personal property necessarily consumes it. The words under consideration may, therefore, fairly be construed to refer to the personalty, and the entire clause to give to his children a remainder in the real estate, and whatever of the personalty was not consumed by the widow during her widowhood." *Giles* v. *Little,* 104 U. S. 291. In *Green* v. *Hewitt,* 97 Ill. 113 (37 Am. R. 102), it was said: "It was also reasonable to suppose that if she lived long as his widow, some of the articles of personalty would be worn out, lost or destroyed; hence, in making the limitation over, it was but natural and proper to use the expression 'whatever remains.' It had reference to the anticipated condition of the personal estate when it would, under the limitation, pass into his daughter's hands. And this is all the significance the expression has."

It is quite clear that the words "all of said personal property remaining" are of feeble effect as compared with the words "for her use during her natural lifetime."

Our ultimate conclusion upon this branch of the case is, that Jane Johnston takes a life interest in all the personal property of which her husband died seized, but that she is not invested with an absolute power of alienation. This conclusion, as we think we have shown, rests on principle, and it certainly is well sustained by authority.

The case of *John* v. *Bradbury,* 97 Ind. 263, carries the general doctrine much further than we are required to do here—possibly too far—and the case of *Van Gorder* v. *Smith,* 99 Ind. 404, while recognizing the general doctrine, points out the true distinction between seemingly similar cases. There are other cases in our reports which assert a doctrine strictly analogous to that affirmed in our conclusion, among them *Hopkins* v. *Quinn,* 93 Ind. 223, *White* v. *Allen,* 81 Ind. 224, *Eltzroth* v. *Binford,* 71 Ind. 455.

The decisions of other courts affirm the law to be as we-

have asserted it. *Smith* v. *Bell,* 6 Peters, 68; *Giles* v. *Little, supra; Brant* v. *Virginia Coal, etc., Co.,* 93 U. S. 326; *Green* v. *Hewitt, supra; Henderson* v. *Blackburn,* 104 Ill. 227 (44 Am. R. 780); *Whitcomb* v. *Taylor,* 122 Mass. 243; *Paine* v. *Barnes,* 100 Mass. 470; *Baxter* v. *Bowyer,* 19 Ohio St. 490; *Stuart* v. *Walker,* 72 Maine, 145 (39 Am. R. 311); *Terry* v. *Wiggins,* 47 N. Y. 512; *Gregory* v. *Cowgill,* 19 Mo. 415; *Hull* v. *Culver,* 34 Conn. 403.

Some of these cases go further than it is necessary for us to do here, but, in so far as they bear upon the phase of the question directly presented to us, we accept them as authority without inquiring whether it is, or is not, proper to extend the doctrine to the limits to which some of the courts have carried it.

The theory of the appellants' complaint, and the concessions of their argument in this court, are, that Jane Johnston has a right to use the property for her support, and for that purpose to dispose of it, but that she has not the absolute power of alienation. Thus regarded, the case is far within the rule, and the construction given the will by the trial court was not the proper one.

If Mrs. Johnston has only an executory life interest in the personal property involved in this controversy, then, upon sound principles of equity and justice, those who have an interest in remainder have a right to invoke the aid of the courts to protect that interest. It is, perhaps, not easy to determine just what relief they are entitled to, but it is clear that they are not entirely without a remedy. Mrs. Johnston can not be inhibited from managing and controlling the property, for that right is expressly given her by the will; but she may be prohibited from destroying it, and from disposing of it, unless it is necessary that it be disposed of for her use and support, or for the purpose of making a change in the investments. The complaint, as we understand it, concedes to her the right to the management and control of the property, as well as the right to make sales for the purpose of

changing an investment, or for the purpose of securing money for her support; but it denies her right to exercise absolute ownership over the property. Our judgment is, that the complaint does not claim too much; whether it claims as much as the law would award the plaintiffs, it is not necessary for us to consider or decide.

It is a very old equity doctrine, that courts will award relief to one holding an interest in remainder against the wrongs of an owner of a life interest. Anciently, the rule seems to have been that the owner of the life-estate would not be required to give security, but would be required to file an inventory of the property. *Foley* v. *Burnell*, 1 Bro. Ch. Cases, 274; *Slanning* v. *Style*, 3 Peere Williams, 334.

Chancellor Kent says: " Lord Thurlow said that the party entitled in remainder could call for the exhibition of an inventory of the property, and which must be signed by the legatee for life, and deposited in court, and that is all he is ordinarily entitled to. But it is admitted that security may still be required in a case of real danger, that the property may be wasted, secreted, or removed." 2 Kent Com. (12th ed.) 354, and authorities cited in note.

It has also been held by able courts, that the owner of the life interest may be compelled to make a permanent and secure investment for the protection of those whose interest is in remainder. *Covenhoven* v. *Shuler*, 2 Paige Ch. 122; *De Peyster* v. *Clendining*, 8 Paige Ch. 295.

The question as to the character and scope of the remedy is not very fully discussed, and we decline to decide what it should be; nor is it essential that the question should be now determined, as it is enough for us to declare, as we do, that the complaint contains facts showing that the plaintiffs are entitled to some relief, for, as is well settled, a complaint containing facts entitling a plaintiff to some relief will repel a demurrer. *Bayless* v. *Glenn*, 72 Ind. 5. The measure of relief to which a plaintiff is entitled can not, ordinarily, be

determined on a demurrer to the complaint, since, if the complaint makes a case for some relief, although not all that is asked, a demurrer should be overruled.

Judgment reversed, with instructions to overrule the demurrer to the complaint.

Filed Feb. 4, 1887.