[Civ. No. 14132.   First Dist., Div. One.   Nov. 23, 1949.]

LEWIS ANDREW STUCK, Appellant, v. BOARD OF MEDICAL EXAMINERS OF THE STATE OF CALIFORNIA et al., Respondents.

752

Richard M. Lyman, Jr., Myron Harris and William H. Older for Appellant.

Fred N. Howser, Attorney General, and J. Albert Hutchinson, Deputy Attorney General, for Respondents.

WARD, J.—In July, 1918, the petitioner and appellant, Lewis Andrew Stuck, was granted a license to practice medicine and surgery in the State of California. On the 12th day of May, 1948, an accusation against him containing four counts of alleged unprofessional conduct was filed with the Board of Medical Examiners of this state. Counts numbered two and

three were dismissed by the board and therefore do not merit consideration. Dr. Stuck was found guilty on counts one and four and his license to practice medicine in the State of California was revoked.

The first count in substance alleged that Dr. Stuck aided and abetted Samuel N. Stern, an unlicensed person, "in the practice of medicine and surgery . . . and the diagnosis of the conditions of human beings, as the same are defined" in the Business and Professions Code. Thereinafter the place, the dates, the names of eight or ten women, the physical condition and the "transaction" or diagnosis made by Samuel N. Stern relative to each woman are set forth in detail.

The fourth count charges that Dr. Stuck offered "to procure an abortion upon the persons of divers women" and that such abortions "were not then and there necessary to preserve the lives of the . . . women." Six names and the dates of the commission of the alleged acts constituting unprofessional conduct are thereupon set forth.

If the evidence is sufficient to sustain any one of the designated charges of aiding or abetting or the agreement or offer to procure a criminal abortion (Bus. & Prof. Code, §§ 2377, 2378, 2392; Pen. Code, § 274), the action of the State Board of Medical Examiners in revoking the license of Dr. Stuck must be upheld (§ 2360).

One of the board's findings is not specifically attacked. Petitioner fails to point out wherein the finding may be considered erroneous. With reference to a similar situation in regard to a demurrer, in *Trabing* v. *California Navigation & Improvement Co.*, 121 Cal. 137, at page 139 [53 P. 644], the court stated: "In appellant's brief only the special demurrer is considered, and we shall therefore assume the sufficiency of the complaint as against a general demurrer; . . ." Also, in *Universal Insurance Co.*, v. *Manhattan Motor Line, Inc.*, 82 Cal.App.2d 425, at page 428 [186 P.2d 437], it was declared by this court: "The second and third causes of action are not argued, although the court found contrary to the contentions of plaintiff on all counts. Plaintiff states that of the three counts contained in the complaint 'the most important is the first, and it is to this count that the evidence was principally directed.' . . . There does not appear to be any argument or further reference to the subject matter in counts two and three. (See Rules on Appeal, rules 13 and 15(a).) In view of this circumstance, any claimed erroneous matter in connection with

the last two counts may be deemed to have been waived. (*Romero* v. *Letts*, 7 Cal.2d 503 [61 P.2d 449]; *County of Humboldt* v. *Kay*, 57 Cal.App.2d 115 [134 P.2d 501].)'' (See 2 Cal.Jur. 728.) The finding herein may be accepted as true. It is stated as follows: ''Samuel N. Stern at all times hereinafter mentioned possessed no license, certificate, or authority to practice medicine or surgery or any other healing art or to engage in the diagnosis of the conditions of human beings and the treatment of the sick and afflicted as the same are defined in the Business and Professions Code of the State of California, or otherwise.''

In 1945, the Government Code provided for the acquisition of jurisdiction by a state board upon the service of an accusation (§ 11505) plus a notice of defense that might be filed by the accused within 15 days after such service upon him (§ 11506). The ''notice of defense . . . may (1) Request a hearing; (2) Object to the accusation upon the ground that it does not state acts or omissions upon which the agency may proceed; (3) Object to the form of the accusation on the ground that it is so indefinite or uncertain that he can not identify the transaction or prepare his defense; (4) Admit the accusation in whole or in part; (5) Present new matter by way of defense.'' (1945 Supp., § 11506, subd. (a).) In the present matter a hearing was requested by appellant to permit him to present his ''defense to the charges contained in said accusation.''

■ Assuming that subdivision (a)(2) of Government Code, section 11506, may be considered to mean a general objection—the question of the board's jurisdiction over the subject matter—that question may be raised at any time during the pendency of the proceeding before the board, the superior court or an appellate court. ■ The answer to such an objection, so far as the facts of this case may be concerned, is found in Business and Professions Code, division 2, chapter 5, articles 1 to 16, inclusive. In brief, the board has power over the subject matter, though such question could be raised for the first time on appeal. (*Emery* v. *Pacific Employers Ins. Co.*, 8 Cal.2d 663 [67 P.2d 1046].) ■ However, as the board is a tribunal of special jurisdiction the accusation should set forth its jurisdiction. The accusation in this proceeding sets forth facts showing the board's jurisdiction over the subject matter and the person of Dr. Stuck. ■ In addition, Dr. Stuck submitted himself to the jurisdiction of the board,

which is permitted if the forum has jurisdiction of the subject matter. (7 Cal.Jur. § 17, p. 598.)

Subdivision (a)(3) of Government Code, section 11506, permitting an objection to the form of the accusation on the ground that it is indefinite or uncertain, provides for a ground similar to that which may be raised on special demurrer before the board or the superior court. In the event that such an objection is meritorious the agency, in this instance the Board of Medical Examiners, may file or permit the filing of an amended or supplemental accusation. (§ 11507.) Unless an objection is taken as provided in subdivision (a)(3), that is, to the form of the accusation, "all objections to the form of the accusation shall be deemed waived." (§ 11506, subd. (b).) At this point it may be well to state that the decision in *Reardon* v. *City of Daly City,* 71 Cal.App.2d 759 [163 P.2d 462], cited by the board on this appeal, is not in point. In the Reardon case it was held that in a mandamus proceeding to restore a party to a public office the right to a public trial may be waived. It was there stated that rights might be waived the same as in a civil case. Nothing in that case is suggestive of the right of a party to waive jurisdiction over the subject matter.

Petitioner appellant contends that the accusation is fatally defective as a matter of law in that there is no allegation therein that appellant "knew or had any information" that "Stern was an unlicensed physician" or that he "owned, controlled, operated, conducted or was in any way connected with an establishment located at 330-15th Street, Oakland, California." Count one alleges that Dr. Stuck aided and abetted Mr. Stern, an unlicensed person, in the practice of medicine and surgery upon certain named human beings on certain dates at an establishment therein designated. There is no allegation that Stern owned, controlled or directed any others in the conduct of the designated office. Such allegation would have been surplusage, as under the facts set forth it was not pertinent whether Stern owned the premises or the paraphernalia contained therein. The facts of *Bley* v. *Board of Dental Examiners,* 120 Cal.App. 426 [7 P.2d 1053], on account of a different background are not in point on this particular issue. (See 1 Cal.Jur. 10-yr. Supp. [1942 Pocket Part], Administrative Law, § 13, p. 34, and cited cases.) The word "abet" not only means assistance or aid but "includes knowledge of the wrongful purpose of the perpetrator." (7 Cal.Jur. 889, 1 C.J.S. 306, n. 6.) By the allegations of

count one the accused was informed not only of the kind of acts he aided and abetted, but in explicit detail, all of which resulted, as alleged, in Dr. Stuck being guilty of unprofessional conduct in the practice of medicine and surgery. (See *Smulson* v. *Board of Dental Examiners,* 47 Cal.App.2d 584 [118 P.2d 483]; *Bley* v. *Board of Dental Examiners, supra.*)

There is a further objection to the sufficiency of the accusation in that "There is no allegation in the accusation in Count 1 that Stern, an unlicensed person, made a vaginal examination or gave a diagnosis of pregnancy on the persons named, wherein Stern was alleged to have been aided and abetted by appellant." Appellant is mistaken. In count one the names of the women involved, the type of examination, the diagnosis and subsequent treatment or operation are set forth in tabulated form. For instance, with respect to the first woman named in the accusation it is alleged that on July 30, 1946, a "Vaginal Examination and diagnosis of pregnancy" was made, and on August 1, 1946, an "Abortion by dilation and curretage" was performed. The same method of alleging the details relative to each named woman is followed throughout.

One more objection made by appellant may be noted as follows: "Referring to Count 4 of the pleadings we find that appellant is charged with offering to procure an abortion. Yet, in the findings of the Board relating to this count, the Board found the appellant guilty of agreeing or offering to procure an abortion. Such a finding as to agreeing or offering is fatal to the judgment of the Board . . ." Without attempting to distinguish the finely spun difference between agreeing and offering, as used in the findings, each of such terms may be said to mean that Dr. Stuck volunteered assistance in the commission of an abortion. However, the point is trivial.

It appears that a criminal charge pending in Alameda County, involving some of the same principals and at least similar facts, was dismissed. The dismissal of a criminal charge involving charges similar to those that appear in the accusation has no direct bearing on the action of the board in revoking Dr. Stuck's license. As stated in *Bold* v. *Board of Medical Examiners,* 135 Cal.App. 29, at pages 34-35 [26 P.2d 707] : "We think it is clear . . . that proceedings before the Board of Medical Examiners, instead of being criminal in character, are designed, rather, to protect the public by

eliminating from the ranks of practitioners those who are found by members of their own profession to be dishonest, immoral or disreputable. As was said in the *Matter of Newell Smith,* 10 Wend. (N.Y.) 449, quoted by the learned trial judge, in his memorandum decision upon the writ of certiorari: 'The trial and acquittal of the defendant upon the indictment for producing the abortion was no bar to this proceeding; they are entirely distinct and independent proceedings, having different objects and results in view; the one having regard to the general welfare and criminal justice of the state; the other simply and exclusively to the respectability and character of the medical profession, and the consequences connected with or necessarily flowing from it.' "

That Samuel N. Stern practiced medicine without a license and performed illegal abortions may be accepted as a proven fact. Appellant relies upon the claim that he did not know Mr. Stern and had not had any dealings with Stern directly. Two other licensed physicians and surgeons charged with aiding and abetting Stern in the practice of medicine and surgery were tried by the board jointly with Dr. Stuck. The theory of the attorney general is that the three accused were conspirators with Stern in practicing medicine without a license or in the performance of abortions. The Business and Professions Code provides that abetting the violation of or entering into a conspiracy to violate a provision of the chapter covering the practice of medicine constitutes unprofessional conduct. (Ch. 5, § 2378.) However, the original accusation against Dr. Stuck does not charge a conspiracy but is limited to the charge of aiding and abetting. Conspirators and abettors are classified as principals. (Pen. Code, § 31.) The board found that Dr. Stuck was an abettor. The superior court made the same finding. This court, therefore, will disregard any reference to the conspiracy theory and eliminate from consideration all evidence directed to the charge of unprofessional conduct against either of the two licensed physicians, Dr. Stock or Dr. Boge, who were charged with unprofessional conduct and tried jointly with Dr. Stuck. There may have been some connection between Dr. Stock and Mr. Stern, or Dr. Boge and Mr. Stern, but from the evidence presented herein there was nothing in common between either Dr. Stock or Dr. Boge personally in connection with the accusation against Dr. Stuck. However, it is reasonable to conclude that, irrespective of evidence directed against Dr. Stock or Dr. Boge, the board and the reviewing court were justified in the

findings made against Dr. Stuck. As the record does not indicate that Dr. Stuck was in any way prejudiced by the *procedure* adopted and that the judgment of revocation of Dr. Stuck's license was not a miscarriage of justice (Cal. Const., art. VI, § 4½), this court may proceed to a consideration of the sufficiency of the evidence.

The narration of a single tale of the alleged transactions on which the accusation was based demonstrates the propriety of the board's and the court's findings. The testimony of one of the women named in the accusation is substantially as follows: The witness met Dr. Stuck for the first time in August, 1946, when she called at his office in the Latham Square Building, Oakland, California. On presentation of the evidence it was here stipulated that the witness identified Dr. Stuck. Upon entering the reception room of his office, the location of which she had ascertained from the building directory, she waited for a period and Dr. Stuck appeared. He invited her to come into a private office, whereupon she told him that she was pregnant and had come to him as she had heard that he might help her. Dr. Stuck "said no" but gave her a slip of paper, indicating an address for her to write down— 330-15th Street, Oakland—where she was to go for the help she desired. He made no examination, asked no history of her condition, nor was any fee discussed. The next day, the 15th of August, the witness went to the address given her by Dr. Stuck and on entering the building she was met in the waiting room by a woman whom she described as appearing to be a nurse. The nurse took the witness into an inner office where they had some conversation as to the purpose of her visit, and when the witness mentioned she had come from Dr. Stuck, the nurse "called the doctor in." He proceeded to ask the witness some questions as to her condition, after which he made a vaginal examination and indicated that for a fee of $300 he "would perform a curettement." She made an appointment for the operation to take place at the same office on the following day. When she returned the next day she saw and talked to the same woman nurse and the same man, and paid to him the $300. Thereupon she was taken into another room, "sort of an operating room," and in the presence of the nurse the curettement was performed. The witness stated that she was conscious during the operation, that the pain experienced "was kind of general" but felt as though it were being performed "by scraping" in the region of her

uterus. The "scraping effect" was detected by the patient "Both by feeling it and sounds"—she "could hear it." Toward the end of the operation she felt "a cramp-like pain" and when the operation was concluded she went into a small room in the office quarters where she "laid down for a while." On being questioned as to whether since that date she had given birth to a child, the witness replied in the negative.

The facts just related constitute evidence sufficient to sustain the finding of the truth of the accusation in counts one and four. It is not necessary to repeat the story of any of the other women designated in either count. The conclusion reached herein is, in part, based upon code provisions and the views of the Supreme Court of this state. "The hearing need not be conducted according to technical rules relating to evidence and witnesses. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of such evidence over objection in civil actions. Hearsay evidence may be used for the purpose of supplementing or explaining any direct evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." (Gov. Code (1945 Supp.), § 11513(c).) "Where . . . the legislature has created a professional board and has conferred upon it power to administer the provisions of a general regulatory plan governing the members of the profession, the overwhelming weight of authority has rejected any analogy which would require such a board to conduct its proceedings for the revocation of a license in accordance with theories developed in the field of criminal law." (*Webster* v. *Board of Dental Examiners*, 17 Cal.2d 534, at pp. 537-538 [110 P.2d 992].)

Since 1935 the gist of the offense commonly referred to as abortion is the intent to procure the miscarriage of any woman *unless* the treatment or operation is necessary to preserve the life of such woman. (Pen. Code, § 274; *Rinker* v. *State Board of Medical Examiners*, 59 Cal.App.2d 222 [138 P.2d 403]; *People* v. *Ramsey*, 83 Cal.App.2d 707 [189 P.2d 802].) There is no evidence in this case that either Mr. Stern or Dr. Stuck gave any consideration to the necessity of preserving the life of any woman operated upon with intent to procure an abortion. Some of the women named in the accusation were not aborted. In such instances only a vaginal examination was

made, which also is part of the practice of medicine and surgery. Stern, an unlicensed person, was guilty of that offense, and Dr. Stuck assisted and abetted him by procuring women for examination, diagnosis and treatment.

In each instance of the "transactions" included in the present accusation, Dr. Stuck supplied the patient to Stern. The fact that there is no evidence that Dr. Stuck knew Stern is of no consequence. Dr. Stuck had been told that each of the women was pregnant and desired an abortion. If Dr. Stuck sent a woman to an address where he believed an abortion establishment was being conducted, it is immaterial that the abortion was procured by "A" if Dr. Stuck intended that the operation should be performed by "B." In the reference by a licensed practitioner of persons for diagnosis or treatment of a condition of the human body, it is incumbent upon the licensed practitioner to protect the prospective patient from an unlicensed practitioner. In the present case, when all the evidence is considered, a reasonable inference may be drawn that Dr. Stuck knew that the diagnostician and operator at the 15th Street address was an unlicensed practitioner. On occasions when one or more of the witnesses so referred had asked Dr. Stuck whether the person at the given address "was an M.D.," Dr. Stuck had replied "he thought so."

When a reasonable inference is based upon definite facts the appellate court will not "substitute its own conclusions for those reached by the trial court." (*Webster* v. *Board of Dental Examiners, supra,* at p. 540.)

The judgment rendered against the petitioner and appellant is affirmed.

Peters, P. J., and Bray, J., concurred.