[S. F. No. 20957. In Bank. July 19, 1962.]

MAURICE DUSKIN, Plaintiff and Appellant, v. THE
STATE BOARD OF DRY CLEANERS, DEPART-
MENT OF PROFESSIONAL AND VOCATIONAL
STANDARDS, Defendant and Respondent.

Walter T. Winter for Plaintiff and Appellant.

Stanley Mosk, Attorney General, Harold B. Haas, Assistant Attorney General, James B. Davis and Roderic Duncan, Deputy Attorneys General, for Defendant and Respondent.

WHITE, J.—This is an appeal by Maurice Duskin, an individual engaged in the dry cleaning business and a licensee of respondent State Board of Dry Cleaners, from a judgment denying his petition for a writ of mandate sought to compel respondent board to reinstate his licenses.

Respondent board proceeded against petitioner pursuant to section 9547 of the Business and Professions Code, which provides: "If after investigation the board determines that the financial responsibility of an applicant or licensee is questionable, the board may, in the public interest, require such person to file with the board a surety bond in the sum of one thousand dollars ($1,000) executed by a surety company authorized to do business in this State, *which bond shall be in such form and on such conditions as the board may by regula-*

*tion require for the protection of persons with whom the licensee may deal as a licensee."* (Emphasis added.) (Stats. 1957, ch. 1813, § 1, pp. 3211-3212.) Section 9547.4 of the same code permits the filing of bearer bonds of a value of $1,000 in the alternative.

Petitioner's financial responsibility was investigated and the board determined, apparently upon evidence that numerous liens were filed against petitioner, that the latter's financial responsibility was "questionable" within the provision of above section 9547. The sufficiency of the evidence to support that determination is not challenged herein.

On June 25, 1959, the board demanded that petitioner file a $1,000 surety bond or bearer bonds in the same amount. No bond or bonds were produced, and petitioner's licenses were ultimately revoked (Bus. & Prof. Code, § 9594, subd. (1)), subject to a permanent stay order if bonds were filed within 30 days. The trial court determined, in a finding of fact not questioned on this appeal, that: "The petitioner was unable to obtain a surety bond conditioned in the manner required by said respondent and in accordance with Section 509 of Chapter 6 of Title 16 of the California Administrative Code by reason of the fact that no surety company would issue such bond conditioned in the manner required by said respondent. Petitioner, however, could have obtained and filed a bearer bond or bearer bonds with said respondent having a market value of One Thousand Dollars ($1,000.00) or more, and thereby could have satisfied the requirements of Section 9547 . . . and said demand by said respondent already mentioned, but petitioner has at all times herein mentioned failed and refused to file said bearer bond."

Petitioner contends that section 9547 is unconstitutional on its face because the term "questionable financial responsibility" is vague, indefinite and uncertain, so that the revocation of any license by respondent board when acting upon the basis of such a standard is unconstitutional. ▮▮▮ It is true that "[a] certain precision is essential in a statute regulating a fundamental right" (*Perez* v. *Sharp*, 32 Cal.2d 711, 728 [198 P.2d 17]), and that such requirement of definiteness applies to statutes regulating the right to engage in one's chosen occupation, including the dry cleaning business involved herein. (See *Cozad* v. *Board of Chiropractic Examiners*, 153 Cal.App.2d 249, 256 [314 P.2d 500].) ▮▮▮ But the particular inquiry herein is not, as petitioner appears to argue, whether the instant standard is adequate to withstand

that degree of judicial scrutiny given to a standard prescribing conduct in a "self-executing" statute (see *In re Newbern,* 53 Cal.2d 786, 792, 797 [3 Cal.Rptr. 364, 350 P.2d 116]; *People* v. *McCaughan,* 49 Cal.2d 409, 414-417 [317 P.2d 974]; *McMurtry* v. *State Board of Medical Examiners,* 180 Cal.App. 2d 760, 765-766, 770 [4 Cal.Rptr. 910]; *People* v. *Saad,* 105 Cal.App.2d Supp. 851, 853-854 [234 P.2d 785]), since a dry cleaning licensee may be subject to the within standard only following formal action by the board. The standard of definiteness instantly relevant is that applicable where the Legislature delegates responsibility to a board or agency to carry out a legislatively declared policy. Such a standard need be sufficiently definite only to provide directives of conduct for the administrative body in exercising its delegated administrative or regulatory powers. (*California State Auto. etc. Bureau* v. *Downey,* 96 Cal.App.2d 876, 901, 906-907 [216 P.2d 882]; see *Wotton* v. *Bush,* 41 Cal.2d 460, 463, 468 [11] [12] [261 P.2d 256]; *El Dorado Oil Works* v. *McColgan,* 34 Cal.2d 731, 737-738 [215 P.2d 4]; *Jersey Maid Milk Products Co.* v. *Brock,* 13 Cal.2d 620, 656-657 [91 P.2d 577]; see also *State Board of Dry Cleaners* v. *Thrift-D-Lux Cleaners, Inc.,* 40 Cal.2d 436, 458 [254 P.2d 29]; 41 Cal.L.Rev. 523, 529-532.)

Also, procedural guarantees in effect insulate licensees from the reach of the instant bond requirement of $1,000. (See 1 Davis, Administrative Law Treatise (1958) § 2.08, p. 108.) ▆▆ In addition to the investigation which is required of the board by section 9547, a licensee is entitled to a hearing upon proper notice prior to denial or revocation of a license if he "has failed to comply with any written demand . . . of the board" (Bus. & Prof. Code, § 9594, subd. (1)), which provision would apply to a written demand by the board for a licensee to satisfy the bond requirements of section 9547. ▆▆ The proceedings of the board are also subject to the general statutory provisions for administrative adjudication including judicial review (see Gov. Code, §§ 11501, 11503, 11506, 11523), thus ensuring that licensees are dealt with according to proper procedures.

▆▆ Our inquiry then is whether the reference to financial responsibility which is "questionable" possesses the requisite certainty to guide respondent board in its determinations pursuant to section 9547. We are satisfied that it does and that in referring to "questionable financial responsibility," the Legislature intended to describe a condition, not necessarily involving insolvency, but rather a financial condition which

presented a substantial risk to "persons with whom the licensee may deal as a licensee." (See Bus. & Prof. Code, § 9547.)

 Thus, when recourse is had to the purposes and intent of our regulatory statutes governing the dry cleaning industry (Bus. & Prof. Code, div. 3, ch. 18), and particularly section 9547, the reasoning seems inescapable that "questionable financial responsibility" refers to a doubtful financial situation affecting the licensee which exists whether generated by existing liens, bills payable or otherwise, that in the opinion of respondent board creates *a substantial reason* for the conclusion that persons dealing with a licensee as customers may suffer loss through such patronage in damage to goods entrusted to the licensee for repair, cleaning, dyeing, pressing or otherwise. As so construed, the reference to "questionable" financial responsibility in section 9547 is sufficiently precise to prescribe a standard or policy directive for the guidance of respondent board in its determinations concerning the requiring of bonds of applicants or licensees pursuant to sections 9547 and 9547.4.

 What we have just said answers petitioner's attack upon the constitutionality of section 9547 on the ground that the phrase "for the protection of persons with whom the licensee may deal as a licensee" is vague, indefinite and uncertain.

 Petitioner also questions the validity of section 9547 because the provision therein that the $1,000 bond (which may be required by respondent board of applicants or licensees of questionable financial responsibility) "shall be in such form and on such conditions *as the board may by regulation require* for the protection of persons with whom the licensee may deal as a licensee," is an unwarranted delegation of authority to an administrative board. (Emphasis added.) This contention is without merit.

In the statute with which we are here concerned (Bus. & Prof. Code, § 9547), it is manifest that we are faced with a situation where the Legislature has attempted to provide a guide for subsequent and more precise regulatory enactments to be formulated by the administrative agency. As held in *American Distilling Co.* v. *State Board of Equalization,* 55 Cal.App.2d 799, 805 [131 P.2d 609], "[T]he Legislature may delegate authority to administrative boards to adopt and enforce reasonable rules for carrying into effect the expressed purpose of a statute even though such rules include the authorization to exercise discretion in doing so,

162

provided that discretion is not purely arbitrary and does not amount to a sanction to add to or change the statute or confer upon the board a right to determine what the law shall be in a particular case.'' (Accord: *Jersey Maid Milk Products Co. v. Brock, supra,* 13 Cal.2d 620, 658; *In re Weisberg,* 215 Cal. 624, 633 [12 P.2d 446]; see *Villain v. Civil Service Com.,* 18 Cal.2d 851, 854-856 [117 P.2d 880]; 41 Cal.L.Rev. 523, 529-532; see also *State Board of Dry Cleaners v. Thrift-D-Lux Cleaners, Inc., supra,* 40 Cal.2d 436, 458.) ▮▮▮ Respondent board has not been authorized by section 9547 to alter the terms of its legislatively prescribed directives and limitations, but merely to enact regulations providing the form and conditions of a bond "for the protection of persons with whom the licensee may deal as a licensee." The latter phrase is an additional indication that conditions of bonds and contingencies provided for by regulations enacted pursuant to section 9547 must be consistent with and in furtherance of the purposes of the statutory provisions furnishing the basis of the regulation of the dry cleaning industry in this state. (Bus. & Prof. Code, div. 3, ch. 18.) Thus the phrase in section 9547, "for the protection of persons with whom the licensee may deal as a licensee," is valid against petitioner's attack on the ground of vagueness in delegation of rule making power. It is sufficient if no contingencies can be provided for by regulation which are outside the purposes of the statutes regulating the dry cleaning industry. (See Bus. & Prof. Code, § 9533.)

Pursuant to the directive of section 9547, respondent board enacted a regulation prescribing the form and conditions of the bond it was to demand of petitioner and other licensees. The regulation provided, as instantly relevant, that: "WHEREAS, said Chapter 18 authorizes said board to require . . . [a] licensee whose financial responsibility has been determined by the board to be questionable to file with the board a bond in the sum of one thousand dollars ($1,000) conditioned in such manner as the board may require for the protection of persons with whom the licensee may deal as a licensee; . . . . Now, THEREFORE, if the said Principal shall honestly and faithfully perform and discharge *all financial undertakings and obligations arising out of the conduct of business as a licensee* as aforesaid, then this obligation shall be null and void; otherwise to remain in full force and effect." (Emphasis added.) (Cal. Admin. Code, tit. 16, § 509.)

▮▮▮ The enabling statute for the latter regulation as to

bond protection (§ 9547) provided that: ". . . the board may, *in the public interest,* require such person to file with the board a surety bond . . . in such form and on such conditions as the board may by regulation require *for the protection of persons with whom the licensee may deal as a licensee."* (Emphasis added.) Thus such a surety bond may be required only "in the public interest," and may protect only those persons dealing with a dry cleaner "as a licensee." The inquiry then is whether a bond requiring the surety to "perform and discharge all financial undertakings and obligations arising out of the conduct of business as a licensee" is invalid as an attempt to enlarge the scope of the persons protected by section 9547.

"Public interest" is defined in Black's Law Dictionary (4th ed. 1951), as: "Something in which the public, the community at large, has some pecuniary interest, or some interest by which their legal rights or liabilities are affected. . . ." The latter authority also defines the adjective "public" as: "Pertaining to a . . . whole community . . . or affecting the whole body of people. . . ." To the same effect is a discussion in *Southern Pacific Co.* v. *Railroad Com.,* 13 Cal.2d 89, 97-99 [87 P.2d 1055], wherein the public interest is equated with the interests of the general public as consumers. (See also *Gardner* v. *Vic Tanny Compton, Inc.,* 182 Cal.App.2d 506, 510-511 [6 Cal.Rptr. 490].) The legislative prescription that the bond be required "in the public interest" thus points toward a conclusion that it is those who avail themselves of dry cleaning services who are to be protected, rather than suppliers or other general business creditors of a licensee. Such a conclusion is strengthened by a consideration of the phrase, "for the protection of persons with whom the licensee may deal as a licensee," within the context of the statutory scheme for regulating the dry cleaning industry.

Section 9540 of the Business and Professions Code provides that an applicant for a license to operate a clothes cleaning or like establishment must submit evidence showing that " [h]e possesses competent knowledge of the particular branch of the industry in which he wishes to engage," and evidence that " [h]e has the character, ability and fitness therefor." Also, section 9550 of that code prohibits the operation of any dry cleaning establishment unless a registered operator is present, and section 9551.5 provides that a registrant " [b]e of good

moral character," possess at least one year's active experience in the trade, and "[d]emonstrate by examination that he possesses the knowledge and skills necessary to qualify him to engage in the particular activity for which the certificate is sought." Further, section 9575.6 establishes a fund "for conducting research and to disseminate to the dry cleaning industry and the general public information on the factors involved in the cleaning and maintenance of fabrics. . . ." ■■■ In short, it would appear that the general tenor of our statutes regulating the dry cleaning industry is to provide protection to the mass of our citizenry who order dry cleaning services performed on their garments, rather than to afford protection for suppliers or such other general creditors of a licensee.[1]

■■■ While questionable financial responsibility might be evidenced by irresponsibility of payment to suppliers or other general creditors, it is significant that section 9547.1 limits the recovery by any single individual who sues on the bond to $100. Such a comparatively small allowable recovery also tends to indicate that only customers of a dry cleaner are to be protected by the instantly involved statutory provisions concerning bonds. It is quite usual for an article of clothing to have a value of $100 or less, but it would seem that bills for rent, cleaning supplies, machinery, or other such business necessaries would often tend to be far in excess of $100, so that such a recovery would be of comparatively slight benefit to many individuals supplying business needs.

■■■ It thus appears certain from the latter consideration and discussion of factors bearing on the interpretation of the "class protected" provisions of section 9547, that only customers of a dry cleaner are meant to be benefited by that section, and we so hold.[2]

■■■ However, as set forth above, the conditions of the bond as provided by administrative regulation purported to

---

[1]According to a report by a senate committee, the president and executive secretary of respondent board testified in hearings concerning enactment of additional regulatory legislation for the dry cleaning industry that the board engaged in two functions: (1) to protect the public health and safety by exercising especially close supervision of potential fire hazards in the industry, and (2) "of attempting to assure competence of work or standards of work not necessarily related to the public health and safety." (Senate Interim Committee on Licensing Business and Professions, 1956 Partial Report to the Legislature, p. 87.)

[2]Respondent, although arguing at one point that the bond provisions of section 9547 could be construed to run in favor of general creditors, at another point admitted that it is "probably correct" to interpret section 9547 "as providing for a bond running only to customers."

provide coverage for "all financial undertakings and obligations arising out of the conduct of business as a licensee," which language appears to provide bond coverage for general creditors as well as customers. It is difficult to perceive how a dry cleaner, in accepting garments from a customer to be cleaned, could be considered to be, except in an overly technical sense, entering into a "financial undertaking" with the customer. Further, a bond covering *all obligations arising out of the conduct of business as a licensee* is materially broader than the statutory mandate to require, in the public interest, a bond for the protection of those individuals dealing with a dry cleaner as such, when the public interest is viewed as that which affects the community at large, and it is understood that dry cleaners are licensed principally in order to maintain adequate standards of workmanship (apart from fire prevention purposes).

It is expressly provided in section 11374 of the Government Code that: "Whenever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute." (See *Macomber* v. *State Social Welfare Board,* 175 Cal.App.2d 614, 616-617 [346 P.2d 808]; Gov. Code, § 11373.) Thus the regulation (16 Cal.Admin. Code, § 509), insofar as it attempted to enlarge the terms of the enabling statute, section 9547, by providing coverage for general creditors of a dry cleaning licensee, is invalid. Respondent's argument that the prospective bond provision must be interpreted in a manner similar to its enabling statute (see 8 Cal.Jur.2d, Bonds, § 38) is not applicable, since we are here interpreting an administrative regulation rather than a bond, and section 11374 of the Government Code renders ineffective any administrative regulation inconsistent with its authorizing statutory provision or provisions. (See also *Nickals* v. *Stanley,* 146 Cal. 724, 725-726 [81 P. 117].)

In view of our holding that the terms of the bond demanded by respondent board, inuring as they did to the benefit of general creditors is invalid, it becomes unnecessary to discuss additional contentions herein advanced.

For the foregoing reasons the judgment is reversed. The court below is directed to order respondent board to set aside

its decision revoking petitioner's licenses, and to remand the cause to the board for further proceedings not inconsistent with the views herein expressed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., and Peters, J., concurred.