[Civ. No. 41808. Second Dist., Div. Two. Mar. 15, 1974.]

PHILIP GOLDBERG, Plaintiff and Appellant, v.
RICHARDS D. BARGER, as Insurance Commissioner, etc.,
Defendant and Respondent.

## COUNSEL

Richards, Watson, Dreyfuss & Gershon and Louis M. Meisinger for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Arthur C. de Goede and Richard W. Bakke, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**BEACH, J.**—Petitioner appeals denial by superior court of his petition for writ of mandamus. Petitioner sought to compel respondent Insurance Commissioner (Commissioner) to issue petitioner a life and disability insurance agent license. After a hearing, Commissioner denied the application on the basis that (1) petitioner was "not of good business reputation" (relying on Ins. Code, § 1668, subd. (d)); and (2) that issuance would be "against public interest" (relying on code[1] § 1668, subd. (b).)

FACTS:

After petitioner made application for a license, the Commissioner requested him to submit examination reports made by the insurance departments of the States of New York and Arizona on insurance companies, one in each state, which petitioner controlled and operated. These reports contain allegations, with respect to petitioner, involving violations of law, various other misdealings, mismanagement and missing company property.

---

[1]Unless otherwise indicated, hereafter all references to the code or code sections refer to California Insurance Code.

The New York company was found insolvent by the New York Department of Insurance in 1968, while the Arizona company was placed in receivership of the Arizona Director of Insurance.

In October 1970, a federal indictment was issued in Arizona against petioner and others for mail fraud in connection with the operations of the petitioner's Arizona insurance company.

*The Insurance Commissioner's Proposed Findings and Conclusions.*

Commissioner stated that the examination reports of the New York and Arizona state insurance departments constituted the evidence for the conclusion that petitioner "is not of good business reputation." (Ins. Code, § 1668, subd. (d).) The federal indictment constituted the basis for the conclusion that the "granting of the license will be against public interest." (Ins. Code, § 1668, subd. (b).)

APPELLANT'S CONTENTIONS:

Appellant-petitioner makes four contentions, as follows:

1. Subdivisions (b) and (d) of section 1668 are unconstitutional on their face and in their application to this case.

2. Commissioner's decision is not supported by the findings and even if the findings were supported by substantial evidence there would still be no grounds for denial of a license under subdivisions (b) and (d) of section 1668.

3. Petitioner was erroneously assigned the burden of proof respecting the charges or accusations against him (in the reports), thereby requiring him to disprove such charges or accusations and thus there was a deprivation of a fair trial and an abuse of discretion by Commissioner.

4. Since the Commissioner has fully exercised his fact-finding and discretionary prerogatives on the basis of the findings made by him, petitioner is entitled to a license as a matter of law.

ISSUES:

The issues presented to us are: (1) Did the trial court in the mandamus proceeding correctly determine that there was substantial evidence to support the findings in the administrative hearings, and upon which the Commissioner denied the application? (2) Do subdivisions (b) and (d) of section 1668 deprive applicant of rights without due process of law and are they therefore unconstitutional?

DISCUSSION:

## A. *The Decision Resting on Section 1668, Subdivision (d).*

### (1) *Constitutional Validity.*

Section 1668, subdivision (d) provides: "The commissioner may deny an application for any license issued pursuant to this chapter if: . . . (d) The applicant is not of good business reputation."

■ Appellant contends that this provision is unconstitutional because the standard of using applicant's "reputation" is not rationally connected to the fitness of the applicant to act as an insurance agent and therefore no legitimate state interest is protected or promoted thereby. Also appellant contends that such section is unconstitutionally vague. We do not agree with appellant's contentions.

Such standards and similar statutes in other fields requiring licensing have been held valid. For example, section 10152 of the Business and Professions Code gives the real estate commissioner authority to require such proof as he may deem proper concerning the *honesty, truthfulness* and *good reputation* of any applicant for a real estate license. This section has been held constitutionally valid. (*Riley* v. *Chambers,* 181 Cal. 589, 595 [185 P. 855, 8 A.L.R. 418]; *Payne* v. *Real Estate Commissioner,* 93 Cal. App.2d 532, 537 [209 P.2d 419]; *Glick* v. *Scudder,* 69 Cal.App.2d 717, 719 [160 P.2d 90]; *McDonough* v. *Goodcell,* 13 Cal.2d 741 [91 P.2d 1035, 123 A.L.R. 1205].)

In *McDonough* v. *Goodcell, supra,* 13 Cal.2d 741, the Supreme Court denied an application for a writ of mandamus to compel the insurance commissioner to issue a permit to conduct a bail bond business. There the court, relying upon *Riley* v. *Chambers, supra,* 181 Cal. 589, indicated that numerous instances may be noted where the Legislature has left the discretion in an administrative board to ascertain facts, and in accordance with those facts to grant or deny a permit to engage in a business which is so subject to regulations. In upholding the statutory standard of character, the court in *McDonough* relied on the following language in *Riley*: " '. . . it may be said that the power of the commissioner to refuse a license if he is not satisfied as to the character of the applicant practically gives him arbitrary power as he alone can determine whether he is satisfied or not. This, however, is not true. While the commissioner has the power to refuse· a license if he is not satisfied as to the character of the applicant, his discretion is not arbitrary. There must exist facts which reasonably justify his conclusion that the applicant is not of good character and reputation. If

such facts do not exist, it is his duty to issue the license and this duty can be enforced by the courts.'" (*McDonough* v. *Goodcell, supra,* 13 Cal.2d at p. 747.)

The above decisions disclose that words in statutory standards such as "honesty," "good character" and "good business reputation" are not vague nor do they fail to promote a legitimate state interest. Such words do not unconstitutionally invest Commissioner with unbridled discretion to deny a license on the basis of rumor, innuendo and surmise.

Language of the United States Supreme Court is clearly applicable to the constitutionality of and the need for subdivision (d). With reference to California's insurance agents and brokers licensing regulations, the Supreme Court stated in *Robertson* v. *California,* 328 U.S. 440, 447 [90 L.Ed. 1366, 1373, 66 S.Ct. 1160]: "We accept the regulation for what it purports to be on its face and by the statute's express declaration, namely, a series of regulations designed and reasonably adapted to protect the public from fraud, misrepresentation, incompetence and sharp practice which falls short of minimum standards of decency in the selling of insurance by personal solicitation and salesmanship. That such dangers may exist, may even be widely prevalent in the absence of such controls, is a matter of common knowledge and experience. And no argument is needed to show that these evils are most apt to arise in connection with the activities of the less reliable and responsible insurers, as well as insurance brokers or salesmen, and vitally affect the public interest." The use of the standard of "business reputation" in promoting these purposes and protecting these interests is reasonable regulation.

Section 1668, subdivision (d), is constitutionally certain. In *Duskin* v. *State Board of Dry Cleaners,* 58 Cal.2d 155, at pages 159-160 [23 Cal. Rptr. 404, 373 P.2d 468], the court stated the applicable requirement of constitutional certainty as follows: ". . . '[a] certain precision is essential in a statute regulating a fundamental right' [citation], and . . . such requirement of definiteness applies to statutes regulating the right to engage in one's chosen occupation, . . . [Citation.] But the particular inquiry herein is not, as petitioner appears to argue, whether the instant standard is adequate to withstand that degree of judicial scrutiny given to a standard prescribing conduct in a 'self-executing' statute [citations], since a dry cleaning licensee may be subject to the within standard only following formal action by the board. The standard of definiteness instantly relevant is that applicable where the Legislature delegates responsibility to a board or agency to carry out a legislatively declared policy. Such a standard need be sufficiently definite only to provide directives of conduct for the ad-

ministrative body in exercising its delegated administrative or regulatory powers. [Citations.]"

In the case at bench the above standard is met by the statute. Subdivision (d) can be applied only following formal action by the Commissioner, which includes the right of a hearing to petitioner.

We are mindful of the difference between character and reputation. We are aware also that occasionally cases and authorities discuss one or the other in general terms and sometimes improperly use one term for the other. (For discussion of the problem, see 14 C.J.S. 399.) That is not a problem here. The statute uses the word *reputation*. It is *reputation* itself as a standard which we are considering.

The standard used in the statute here involved is not one of merely "reputation" but one of "business reputation." This more definite standard certainly bears a more rational relationship to the inquiry of a person's competency to engage in the business of selling insurance than the broader standard of "reputation" alone.

The quality described in the statute is ascertainable. The existence of a good business reputation is a fact capable of being determined.

Appellant contends that such cases as those relied upon above are distinguishable in that those cases dealt with the standard of "character." He next asserts that character is a demonstrable standard provable by specific acts. This distinction is without merit. The fact that character is provable by evidence of specific or particular acts and that reputation may be or is provable by some other form or other type of evidence does not mean that reputation cannot validly be a matter or fact which constitutes a part of a standard and about which inquiry may be made, testimony given, and other evidence adduced. Appellant merely demonstrates that the cases may have spoken about character as well as reputation, but the cases noted clearly refer to reputation as a separate and proper standard to be considered. That the other cases have considered the matter of reputation along with character does not mean that reputation cannot be considered alone.

Because reputation is a form of opinion evidence does not make it unconstitutionally vague, indefinite or uncertain or incapable of being evidence. Other commonly and justifiably accepted matters rest upon opinion. For example, as discussed earlier, the standard of "good character" has repeatedly been upheld as a proper and constitutionally valid standard. Yet, the assessment by a person that another person has a good character is a form of opinion.

At this point of determining whether or not good business reputation is a constitutionally valid and fair standard, the matter of *how* reputation is proven is really not in issue except to assure ourselves that such condition or quality or matter is sufficiently definite enough to be reasonably understandable and susceptible of proof.

Appellant complains that the section fails to establish definite standards of *conduct*. It is not necessary that all licensing standards relate to conduct. It is sufficient that the standards relate to demonstrable, provable qualities of an individual. We need merely to point to but a few standards as are required of doctors, lawyers, engineers, teachers, dentists and many others concerning their qualifications, training, knowledge and skills to demonstrate the invalidity of this contention by appellant.

(2) *The Sufficiency of the Evidence and the Findings to Support the Judgment of the Trial Court.*

■ The superior court held that the findings of the Commissioner supported his decision. In reviewing the attack by appellant in this portion of the appeal, the reviewing court is limited to determining whether there is any substantial evidence to support the decision of the trial court. The reviewing court does not reweigh or reevaluate the evidence.

The decision of the Commissioner was that he was unable to find that appellant was of good business reputation. This was based upon the reports of the New York and Arizona Insurance Commissioners. There is no logical reason why the report of a public official concerning the "reputed" mismanagement and bad business conduct of a person cannot constitute a form of reputation evidence. The reports admittedly are hearsay. But that is no reason for rejecting them in this case. Appellant himself offered the reports in response to a legitimate inquiry from the Commissioner concerning his prior dealings and activities in the insurance business and what had been reported of him concerning those activities. That the reports may have contained allegations of acts which appellant denied does not remove the reports from the status of a form of evidence and a form of reputation. The objections of hearsay, lack of foundation and the issue of whether it is or is not a business record or official document made in the course of official business are not applicable in this particular case. First of all, the documents were provided by the applicant himself and no objection to their consideration by the Commissioner is found in the record. Secondly, the use of such documentary or written evidence as indicated is provided for by statute and has been upheld in prior decisions. The California Administrative Adjudication Act (formerly entitled California Administrative Pro-

cedure Act), Government Code, section 11513, subdivision (c) provides: "The hearing need not be conducted according to technical rules relating to *evidence* and witnesses. *Any relevant evidence shall be admitted* if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, . . ." (Italics added.) The fact that it may have been received because of the liberal provisions of the California Administrative Adjudication Act does not make it any the less substantial.

The evidence here in the form of reports of petitioner's conduct as assessed by the Insurance Commissioners of New York and Arizona is substantial evidence. The fact that it may be circumstantial and not direct does not deprive it of probative value or substantiality.

The fact that the evidence is in the form of a report rather than the oral testimony of a present witness is not determinative of its usefulness or its acceptability to the administrative proceeding. (*Epstein* v. *California Horse Racing Board,* 222 Cal.App.2d 831 [35 Cal.Rptr. 642].) Such evidence often has been said to be admissible if it can supplement and help explain other evidence. (*Harris* v. *Alcoholic Bev. Con. Appeals Bd.,* 212 Cal.App. 2d 106 [28 Cal.Rptr. 74]; *Mercurio* v. *Dept. Alcoholic etc. Control,* 144 Cal.App.2d 626 [301 P.2d 474].) In the case of an application for a license such as the case at bench, we do not believe that such an additional requirement (that it be supportive of other evidence) is necessary to permit the introduction of the evidence and does not affect its substantiality. If the opinion evidence is from a reliable source such as made from an investigation by an official board or person whose duty it is to so investigate, such opinion is substantial itself even if it constitutes but the only evidence. Opinion evidence may be sufficient for the decision of an administrative board. (*So. Cal. Jockey Club* v. *Cal. etc. Racing Bd.,* 36 Cal.2d 167 [223 P.2d 1].) The fact that such evidence is hearsay does not diminish the propriety of receiving such evidence and its probative value. (*Kirby* v. *Alcoholic Bev. etc. Appeals Bd.,* 8 Cal.App.3d 1009 [87 Cal.Rptr. 908].)

We hold that the reports in this case were admissible evidence. The trial court properly found that there existed substantial evidence to support the finding of the Commissioner.

B. *The Decision Resting on Insurance Code Section 1668, Subdivision (b).*

Section 1668, subdivision (b) provides: "The commissioner may deny an application for any license issued pursuant to this chapter if: . . . (b) The granting of the license will be against public interest."

The basis for the denial of the license under this subdivision is the fact of the existence of federal indictment in Arizona brought against

petitioner in connection with the operation of his insurance company in that state. The indictment alleged use of the mails in a scheme to defraud. The indictment was still pending. There is no dispute as to the existence or admissibility into evidence of the indictment.

*Ready* v. *Grady,* 243 Cal.App.2d 113 [52 Cal.Rptr. 303], involved the revocation of an insurance license, rather than the question of issuance of a license. However, principles expressed therein are applicable here: "The requirement of an affirmative showing of rehabilitation is especially significant in the instant case, as the expunged felony involved fraudulent insurance claims and was thus directly related to the licenses held by respondent. *The licensing of an insurance agent is administrative and statutory and does not involve a constitutional or common law right.* Regardless of the expungement, the consideration of the prior conviction would be pertinent in determining respondent's eligibility to sell insurance. As indicated above, the relevant provisions of the Insurance Code were not designed to punish the errant licensee but to insure that the *privileges granted under the license* were not exercised in derogation of the *public interest,* and to keep the regulated activity clean and wholesome (*Stuck* v. *Board of Medical Examiners,* 94 Cal.App.2d 751, 757 [211 P.2d 389])." (Italics added.) (P. 117.)

The term "public interest" in the context of regulating the business of insurance to protect the public is a valid guide in determining whether or not decisions of the Insurance Commissioner with respect to such public interest are arbitrary or reasonably based. (*Duskin* v. *State Board of Dry Cleaners, supra,* 58 Cal.2d 155.)

Public interest is "Something in which the public, the community at large, has some pecuniary interest, or some interest by which their legal rights or liabilities are affected." (Black's Law Dictionary (4th ed. 1951).) Public is "Pertaining to a . . . whole community . . . or affecting the whole body of people." (Black's Law Dictionary (4th ed. 1951).) (*Duskin* v. *State Board of Dry Cleaners, supra,* 58 Cal.2d 155, 163; *Southern Pac. Co.* v. *Railroad Com.,* 13 Cal.2d 89, 97-99 [87 P.2d 1055]. See also *Gardner* v. *Vic Tanny Compton, Inc.,* 182 Cal.App.2d 506, 510-511 [6 Cal.Rptr. 490, 87 A.L.R.2d 113].)

The interest of the state in licensing those who act as life and disability agents clearly is legitimate and needs no extended discussion. The purpose of insurance licensing is to protect the public by requiring and maintaining professional standards of conduct on the part of licensees acting as such within this state. (Ins. Code, § 1737; 27 Cal.Jur.2d, Insurance, § 114, p. 599.)

In this light, we find no constitutional problem with the use of "public interest" as a standard with respect to the issuance or denial of licenses to act as insurance agents.

The next question is whether denial of a license in the public interest can be based on the Arizona federal indictment arising out of petitioner's operation of his insurance company in that state, i.e., does such denial have a reasonable basis in light of the public interest or is the denial arbitrary?

As previously pointed out in *Ready* v. *Grady, supra,* 243 Cal.App.2d at page 117, the licensing of an insurance agent "does not involve a constitutional or common law right" (nor does it involve regulation of activities protected by the First Amendment, such as book selling, the regulation or licensing of which would require narrowly drawn statutes or ordinances; see *Perrine* v. *Municipal Court,* 5 Cal.3d 656 [97 Cal.Rptr. 320, 488 P.2d 648].) Also, as previously indicated, the business of insurance requires close regulatory scrutiny. The indictment was without dispute validly introduced into evidence. If the indictment can be a basis for the denial of the insurance license, then, of course, there is a burden on petitioner, in his application, to show that the matter has been resolved in a way that respondent Commissioner cannot base his denial on the existence of such indictment. The record shows that at the time of hearing the indictment was still pending.

Considering the high degree of protection of the public required in the field of insurance, and the questions surrounding petitioner's insurance activities raised by the federal indictment still pending in Arizona, even though an indictment itself is not evidence for purposes of criminal liability, we believe that respondent Commissioner had a reasonable basis for denying petitioner a license to act in this state as a life and disability agent in the public interest.

The denial of a license by respondent Commissioner to petitioner under subdivisions (b) and (d) of section 1668 of the Insurance Code was valid. The judgment of the superior court denying mandamus is affirmed.

Fleming, Acting P. J., and Compton, J., concurred.