[No. B042284. Second Dist., Div. One. May 30, 1990.]

ROBERT D. VALNES, Plaintiff and Appellant, v.
SANTA MONICA RENT CONTROL BOARD, Defendant and
Respondent;
ANNI LUCIANI, Real Party in Interest and Respondent.

**COUNSEL**

Meller & Snyder, Eric Meller, Harry E. Floyd and Scott E. Schutzman for Plaintiff and Appellant.

Anthony A. Trendacosta and Ralph H. Goldsen for Defendant and Respondent.

Lisa Monk Borrino for Real Party in Interest and Respondent.

**OPINION**

**SPENCER, P. J.—**

### INTRODUCTION

Plaintiff Robert D. Valnes (hereafter petitioner) appeals from a judgment denying his petition for writ of mandate (Code Civ. Proc., § 1085).

### STATEMENT OF FACTS

Petitioner owns a condominium in the City of Santa Monica which he rents to real party in interest Anni Luciani. The condominium was converted from an apartment after Santa Monica's rent control laws took effect and without a removal permit, making it subject to the rent control laws and precluding eviction of the tenant in residence at the time of conversion (Santa Monica City Charter, art. XVIII, § 1806(h)(6)).

Desiring to "go out of the business of renting residential housing," as permitted by the Ellis Act (Gov. Code, §§ 7060-7060.7), petitioner attempted to file with defendant Santa Monica Rent Control Board (Board) a "Notice of Intent to Withdraw Residential Rental Units." The Board requires such notice to be filed with it before a landlord may go out of the residential rental business pursuant to the terms of the Ellis Act. (Santa

Monica Rent Control Board Regs., ch. 16, § 16002.) The Board refused to accept petitioner's notice for filing on the ground the Ellis Act does not apply to condominiums.

CONTENTIONS

I

Petitioner contends the trial court's denial of his petition for writ of mandate "constitutes an abuse of discretion and leaves a landlord with no recourse in a situation where a municipal agency has created a regulation contrary to controlling state statutes."

II

Petitioner further contends the Board's manipulation of the Ellis Act's notice provision violated both the clear meaning of the act and the legislative intent expressed therein, requiring reversal of the judgment.

DISCUSSION

I

 Petitioner contends the trial court's denial of his petition for writ of mandate "constitutes an abuse of discretion and leaves a landlord with no recourse in a situation where a municipal agency has created a regulation contrary to controlling state statutes." We disagree.

Code of Civil Procedure section 1085 permits the issuance of a writ of mandate "to compel the performance of an act which the law specially enjoins." The writ will lie where the petitioner has no plain, speedy and adequate alternative remedy, the respondent has a duty to perform and the petitioner has a clear and beneficial right to performance. (*Payne* v. *Superior Court* (1976) 17 Cal.3d 908, 925 [132 Cal.Rptr. 405, 553 P.2d 565]; *San Gabriel Tribune* v. *Superior Court* (1983) 143 Cal.App.3d 762, 771 [192 Cal.Rptr. 415].) The trial court's review of the respondent's actions is limited to determining whether the actions were arbitrary, capricious, entirely lacking in evidentiary support or contrary to required legal procedures. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34-35, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29]; *Stauffer Chemical Co.* v. *Air Resources Board* (1982) 128 Cal.App.3d 789, 793 [180 Cal.Rptr. 550].) On appeal, the question is not whether the trial court has abused its discretion in granting or denying the writ but whether its determination is

supported by substantial evidence. (*Sheard* v. *Superior Court* (1974) 40 Cal.App.3d 207, 210 [114 Cal.Rptr. 743]; *Goldberg* v. *Barger* (1974) 37 Cal.App.3d 987, 994 [112 Cal.Rptr. 827].)

As petitioner states, "[t]he facts in the underlying action are neither complicated nor in dispute. [Petitioner] sought to go out of the business of renting residential housing, pursuant to the terms of the Ellis Act, and notified the [Board] of his desire to withdraw from the residential housing market the Condominium which he owned in a structure consisting of a number of condominiums owned by various persons. [Petitioner] completed a form created by the [Board] and required by that entity to be filed and accepted for filing by the [Board] prior to a landlord in Santa Monica being able to go out of the residential rental business, entitled 'Notice of Intent to Withdraw Residential Units' . . . . [¶] Thereafter the [Board], through one of its authorized representatives, sent to [petitioner] a Notice of Non-Acceptance of his Notice of Intent to Withdraw Residential Units . . . ."

As a result of the Board's refusal to accept his notice for filing, petitioner contends, he "remains unable to record his Notice and to serve it on the [Board] as well as on other Real Parties in Interest, in turn preventing [him] from being able to comply with the regulation of a public entity, the [Board] whose rent control laws require any unlawful detainer action initiated under the terms of the Ellis Act to first be served on the [Board], and to tenants of the affected property with a copy of a recorded Notice of Intent to Withdraw Residential Units which had previously been accepted for filing by the [Board]. As a result of the [Board's] refusal to accept the Notice, [petitioner] is effectively unable to institute an unlawful detainer action against his tenant in the Condominium, pursuant to the terms of the Ellis Act."

The Board indicated in its notice of nonacceptance that petitioner's condominium was not subject to the Ellis Act, therefore he could not withdraw it as a residential rental unit under the act. The trial court agreed with the Board's interpretation of the Ellis Act and thus denied the writ.

■ Petitioner argues the trial court should not have considered whether or not his condominium is subject to the Ellis Act, only whether or not the Board violated the Ellis Act by refusing to accept for filing his "Notice of Intent to Withdraw Residential Rental Units." However, as previously mentioned, a writ of mandate will lie where the respondent has a duty to perform *and the petitioner has a clear and beneficial right to performance.* (*Payne* v. *Superior Court, supra,* 17 Cal.3d at p. 925.) If petitioner has no right to withdraw his condominium from use as a rental unit under the Ellis Act, then he has no clear and beneficial right to have the Board accept for filing his notice pursuant to the terms of the act and he has no right to a writ

of mandate to compel the Board to accept his notice, whether or not the Board had a right to refuse to accept the notice for filing. Thus, the trial court properly considered whether his condominium was subject to the Ellis Act.

The Ellis Act (Gov. Code, §§ 7060-7060.7)[1] was enacted "to supersede any holding or portion of any holding in *Nash v. City of Santa Monica,* 37 Cal.3d 97 to the extent that the holding, or portion of the holding, conflicts with this chapter, so as to permit landlords to go out of business." (§ 7060.7.) The key provision here is section 7060, which states: "No public entity . . . shall, by statute, ordinance, or regulation, or by any administrative action implementing any statute, ordinance or regulation, compel the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease." (Subd. (a).) The section further provides: "For the purposes of this chapter, 'accommodations' means the following: [¶] (1) The residential rental units in any detached physical structure containing four or more residential rental units. [¶] (2) With respect to a detached physical structure containing three or fewer residential rental units, the residential rental units in that structure and in any other structure located on the same parcel of land, including any detached physical structure specified in paragraph (1)." (Subd. (b).) The question is whether petitioner's condominium constitutes "accommodations" within the meaning of section 7060.

■ In discerning the meaning of a statute, the fundamental rule of construction is that the court should ascertain the intent of the Legislature in order to effectuate the purpose of the law. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) ■ In ascertaining legislative intent, the court should turn first to the words of the statute; if necessary, it may also rely on extrinsic aids. (*Ibid.*) These extrinsic aids may include records of the legislative history of the statute, such as legislative committee reports, which are presumed to express legislative intent. (*Southland Mechanical Constructors Corp. v. Nixen* (1981) 119 Cal.App.3d 417, 427 [173 Cal.Rptr. 917].)

■ The term "detached physical structure containing . . . residential rental units" used in section 7060 would appear to exclude condominiums such as petitioner's, which are individually owned units within a commonly owned structure containing a number of such units. The condominium is not a detached physical structure; the larger, detached physical structure contains individually owned units, not residential rental units.

---

[1] Unless otherwise specified, all section references are to the Government Code.

While nothing in the legislative history of the Ellis Act reveals an expressed intent to exclude condominiums from its purview, there are indications the Legislature's primary concern was apartment buildings, whose rental units were being lost through demolition of the buildings or conversion to condominiums. Apartment buildings, of course, clearly fit the description "detached physical structure containing . . . residential rental units."

Both Senate and Assembly analyses of Senate Bill No. 505 (1984-1985 Reg. Sess.) (Sen. Bill No. 505), which became the Ellis Act, discuss *Nash* v. *City of Santa Monica* (1984) 37 Cal.3d 97 [207 Cal.Rptr. 285, 688 P.2d 894], which upheld the constitutionality of a Santa Monica law requiring a landlord to obtain Board permission before "remov[ing] a controlled rental unit from the rental housing market by demolition, conversion or other means." (Sen. Rules Com., Office of Sen. Floor Analyses, Third Reading Rep.; see also Sen. Com. on Judiciary Rep. (Apr. 15, 1985); Assem. Com. on Judiciary, analysis of May 30, 1985 amendments to Sen. Bill No. 505.) The Senate Rules Committee, Office of Senate Floor Analyses, Third Reading Report notes the bill "would not automatically enable the owner to demolish the units or convert them into condominiums"; the Senate Committee on the Judiciary Report discusses the loss of rental units through destruction and condominium conversion. Demolition or destruction and conversion to condominiums are not concerns where the rental unit is a condominium which is a unit in a larger structure.

Additionally, the Assembly on Judiciary analysis notes Sen. Bill No. 505 "contains several provisions designed to prevent landlords from using its provisions to evade rent control and other laws by ceasing to rent under the guise of going out of business." Thus, for example, section 7060.2 allows a public entity to regulate accommodations withdrawn from rental but later offered again for rental. And section 7060.7 indicates the intent that the Ellis Act not: "(1) Interfere with local governmental authority over land use, including regulation of the conversion of existing housing to condominiums or other subdivided interests. [¶] (2) Override procedural protections designed to prevent abuse of the right to evict tenants." Applying the Ellis Act to a condominium could in some cases thwart the intent that the act not serve as a means of evading Santa Monica's rent control laws.

Santa Monica specifically included within the purview of its rent control laws condominiums resulting from conversion after the laws were adopted. (Santa Monica City Charter, art. XVIII, § 1801(c)(5), (n).) It made special provision for those condominiums converted without the required removal permit (*id.*, § 1803(t)), preventing eviction under the rent control laws (*id.*, § 1806) of the tenant in residence at the time of conversion. (*Id.*,

§ 1806(h)(6).) If someone could purchase a condominium which had been converted without the required removal permit, go out of business under the Ellis Act and evict the tenant who resided in the unit prior to its conversion, that person would be able to thwart the city's regulation of the conversion of rental housing to condominiums. This would be contrary to the intent of the Ellis Act. (§ 7060.7.)

While petitioner may be without recourse in this situation, it is a situation of his own making. Santa Monica's rent control laws are quite clear as to the limitations on the rights of a purchaser of a condominium converted after the adoption of the rent control laws without the required removal permit.

Based on the language of section 7060 and the legislative intent behind the enactment of the Ellis Act, we hold the act does not apply to a condominium which is one unit in a structure containing multiple individually owned units. Petitioner therefore not being entitled to withdraw his condominium from rental under the terms of the Ellis Act, the trial court did not err in denying him a writ of mandate to compel the Board to accept his "Notice of Intent to Withdraw Residential Units" pursuant to the terms of the Ellis Act.[2]

The judgment is affirmed.

Devich, J., and Ortega, J., concurred.

---

[2] In light of this conclusion, we need not address the remainder of petitioner's contentions.